(PRIZE.)

## LA AMISTAD DE RUES.—*Almiral*, Libellant.

*Quære*, Whether, where a prize has been taken by a privateer fitted out in violation of our neutrality, the vessels of the United States have a right to recapture the prize and bring it into our ports for adjudication?

In cases of marine torts, the probable profits of a voyage are not a fit rule for the ascertainment of damages.

In cases of violation of our neutrality by any of the belligerents, if the prize comes *voluntarily* within our territory, it is restored to the original owners by our Courts. But their jurisdiction for this purpose, under the law of nations, extends only to restitution of the specific property, with costs and expenses, during the pendency of the suit, and does not extend to the infliction of vindictive damages as in ordinary cases of marine torts.

Where the original owner seeks for restitution in our Courts upon the ground of a violation of our neutrality by the captors, the *onus probandi* rests upon him, and if there be reasonable doubt respecting the facts, the Court will decline to exercise its jurisdiction.

### APPEAL from the District Court of Louisiana.

1820.

La Amistad
de Rues.

This was the case of a Spanish ship captured by the Venezuelan privateer La Guerriere, on the high seas, in November, 1817, and afterwards forcibly taken possession of near the mouth of the Mississippi, by a detachment from the United States ketch Surprise, and brought into the port of New-Orleans. A libel was there filed in the District Court, in behalf of the original Spanish owners, claiming restitution of the property, upon the ground, (among other things,) that the privateer had augmented her crew in the United States, during the cruise, and before the capture. A claim was given in by the original captors, denying the allegations in the libel, and praying restitution of the property as lawfully captured. At the hearing in the District Court, the cause turned almost entirely upon the question of the augmentation of the crew, and the Court decreed restitution of the property to the original Spanish owners with damages, which were ordered to be ascertained by assessors. The assessors reported damages as follows: to the owners of the ship for loss by plunder,                          $625 00
and to the owners of the cargo for loss of
   market by the capture,               4000 00
and loss by plunder,                            575 00
                                   ——————

                  in the whole,          $5,200 00
The report was confirmed by the Court, and damages decreed accordingly. From this decree, the captors appealed to this Court.

Mr. *C. J. Ingersoll*, for the appellants, argued upon the facts, to show that there was no sufficient evidence to prove that the privateer had augmented her force in the ports of the United States. He insisted, that the burthen of proof to establish this fact rested with the original Spanish owners, who claimed restitution upon it; and that they had not shown, beyond all reasonable doubt, to the satisfaction of the Court, that the captors had increased their armament in violation of our neutrality. He also argued, that supposing the misconduct on the part of the captors ever so clearly established by the evidence, the jurisdiction of our Courts does not extend to the infliction of vindictive damages for their offence, but is limited by the law of nations to restitution of the specific property illegally captured. To carry it further, would be to assume the entire prize jurisdiction with all its incidents, which is exclusively vested in the Courts of the captor's country. At all events, it is well established, that the probable profits of a voyage is not a fit rule for the assessment of damages in cases of marine torts, and even upon that ground alone the decree must be reversed.

The *Attorney-General*, contra, insisted, that the evidence of an illegal augmentation of the force of the privateer in our ports, was sufficiently established by the evidence. He argued, that where the neutrality of our ports is violated in this manner, and the property captured is brought within our territory, the Courts of this country, proceeding *in rem*, are bound not merely to restore the specific property

1820.
La Amistad
de Rues.

to the original owners, but to restore it with costs and damages, as in an ordinary case of illegal seizure. Being possessed of the principal question of prize or no prize, that necessarily draws after it all incidental questions; and the one is no more an invasion of the exclusive jurisdiction of the belligerent Prize Courts than the other. The neutral tribunal having taken jurisdiction for the purpose of vindicating the neutrality of its own country, by placing things in the same state they would have been in, had not that neutrality been violated,—can only do complete justice between the parties, by inflicting upon the captors such damages as will afford the original owners an indemnity for the loss they have sustained.

*March 14th.*

Mr. Justice STORY delivered the opinion of the Court, and, after stating the facts, proceeded as follows. We pass over the question, whether, supposing there was an illegal augmentation of the crew of the privateer in our ports, the American captors had any right forcibly to bring in the prize for adjudication. It is an important question, and when it shall be necessary to decide it, it will deserve serious consideration. The present cause may well be disposed of without any discussion concerning it.

Two questions have been made at the bar. 1. Whether, in point of fact, the illegal augmentation of the crew is so established as to entitle the Spanish libellants to restitution. 2. If so, whether the damages were rightfully awarded.

The last question will be first considered. And as to the item of damages for loss of market, we are all of opinion that it is clearly inadmissible. In cases of marine torts, this Court have deliberately settled, that the probable profits of a voyage are not a fit mode for the ascertainment of damages.[a] It is considered that the rule is too uncertain in its own nature, and too limited in its applicability, to entitle it to judicial sanction. The same principle must govern in the present case.

1820.

La Amistad de Rues.

The probable profits of a voyage not a proper rule for the ascertainment of damages in cases of marine torts.

Extent of the jurisdiction of neutral Courts in cases of a violation of neutrality.

But a more general objection is to the allowance of any damages in cases of this sort, as between the belligerents. The doctrine heretofore asserted in this Court is, that whenever a capture is made by any belligerent in violation of our neutrality, if the prize come - voluntarily within our jurisdiction, it shall be restored to the original owners. This is done upon the footing of the general law of nations; and the doctrine is fully recognised by the act of Congress of 1794. But this Court have never yet been understood to carry their jurisdiction, in cases of violation of neutrality, beyond the authority to decree restitution of the specific property, with the costs and expenses during the pending of the judicial proceedings. We are now called upon to give general damages for plunderage, and if the particular circumstances of any case shall hereafter require it, we may be called upon to inflict exemplary damages to the same extent as in the ordinary cases of marine torts. We entirely disclaim any right to inflict such

a The Amiable Nancy, 3 *Wheat.* 546.

damages; and consider it no part of the duty of a neutral nation to interpose, upon the mere footing of the law of nations, to settle all the rights and wrongs which may grow out of a capture between belligerents. Strictly speaking, there can be no such thing as a marine tort between the belligerents. Each has an undoubted right to exercise all the rights of war against the other; and it cannot be a matter of *judicial* complaint, that they are exercised with severity, even if the parties do transcend those rules which the customary laws of war justify. At least, they have never been held within the cognizance of the prize tribunals of neutral nations. The captors are amenable to their own Government exclusively, for any excess or irregularity in their proceedings; and a neutral nation ought no otherwise to interfere, than to prevent captors from obtaining any unjust advantage by a violation of its neutral jurisdiction. Neutral nations may, indeed, inflict pecuniary, or other penalties, on the parties for any such violation; but it then does it professedly in vindication of its own rights, and not by way of compensation to the captured. When called upon by either of the belligerents to act in such cases, all that justice seems to require is, that the neutral nation should fairly execute its own laws, and give no asylum to the property unjustly captured. It is bound, therefore, to restore the property if found within its own ports; but beyond this it is not obliged to interpose between the belligerents. If indeed it were otherwise, there would be no end to the difficulties and embarrassments of neutral prize

tribunals. They would be compelled to decide in every variety of shape upon marine trespasses *in rem*, and *in personam*, between belligerents, without possessing adequate means of ascertaining the real facts, or of compelling the attendance of foreign witnesses; and thus they would draw within their jurisdiction almost every incident of prize. Such a course of things would necessarily create irritations and animosities, and very soon embark neutral nations in all the controversies and hostilities of the conflicting parties. Considerations of public policy come therefore in aid of what we consider the law of nations on this subject; and we may add, that Congress in its legislation has never passed the limit which is here marked out. Until Congress shall choose to prescribe a different rule, this Court will, in cases of this nature, confine itself to the exercise of the simple authority to decree restitution, and decline all inquiries into questions of damages for asserted wrongs. The decree for damages is, therefore, unhesitatingly reversed.

The other question presents more difficulty. It must be admitted, that there is positive testimony directly to the point of the illegal augmentation of the crew of the privateer; and if it stood uncontradicted, and were liable to no deduction, the libellant would certainly be entitled to restitution. But the testimony as to the augmentation, comes chiefly from very obscure persons, and is, in itself, in many respects, loose and equivocal; and that of one, at least, of the principal witnesses, is, in a most material fact,

1820.

La Amistad de Rues.

*Onus probandi, in cases where restitution is claimed by the original owners upon the ground of an illegal armament in our ports, rests upon them.*

directly contradicted by a written document, whose verity has not been questioned. It is proved, by the report of an inspector made to the custom house, that at the arrival of the privateer in port, she had on board 49 men; yet, the witness alluded to, expressly alleges, that at the time of her arrival at New-Orleans, she had not more than ten or twelve persons on board. It appears, too, that the crew of the privateer was wholly composed of foreigners, principally persons from the Spanish Maine, and from St. Domingo. Being arrived at New-Orleans in the course of a cruize, which is not proved to have ended there, the natural presumption is, that her original crew continued attached to her; and this presumption is considerably fortified by the fact, that though the officers of the custom house of that port vigilantly inquire into cases of this nature, there is nothing in their testimony, that in the slightest degree affects the conduct of the privateer in an unfavourable manner. It certainly cannot be. said, that the evidence is free from all reasonable doubt. And, in cases of this nature, where the libellant seeks the aid of a neutral Court to interpose itself against a belligerent capture, on account of a supposed violation of neutrality, we think the burthen of proof rests upon him. To justify a restitution to the original owners, the violation of neutrality should be clearly made out. If it remains doubtful, the Court ought to decline the exercise of its jurisdiction, and leave the property where it finds it. We cannot say that the present case is clear from reasonable doubt; and,

therefore, we reverse the decree of the District Court, and order restitution to be made to the original captors; but, under all the circumstances, the parties are to bear their own costs.

Decree reversed.

DECREE. This cause came on to be heard on the transcript of the record of the District Court of the United States for the district of Louisiana, and was argued by counsel. On consideration whereof, it is DECREED and ORDERED, that the decree of the said District Court, in this case, be, and the same is, hereby reversed and annulled. And this Court, proceeding to pass such decree as the said District Court should have passed, it is further DECREED and ORDERED, that the libel be dismissed, and the said ship La Amistad, her tackle, apparel, and furniture, and cargo, be restored to the claimants. And it is further ORDERED, that each party pay their own costs.