THEODORE LINCOLN *versus* MARINER A. WILDER.

Where land is conveyed according to a plan, to which reference is made in the conveyance, it becomes a part of it; and if the plan bounds the lot by a fresh water stream, the lot extends to the centre of the stream.

The intention of the grantor, if it can be ascertained, is to be carried into effect, but if the expressions of the deed are contradictory, and it cannot be known what is the true meaning, the deed is to be construed most favorably for the grantee.

Where two monuments are referred to in a deed, incompatible with each other, that which is the more certain and the more prominent must prevail over the other.

Thus, where the shore and also a plan are referred to and are incompatible, the plan will be considered the more certain, and will control.

WRIT OF ENTRY to recover possession of that portion of lot numbered 52, in Dennysville, between the shore and the centre of Dennys river.

The plaintiff claimed title by conveyance from one Russel, which embraced lot numbered 52, according to the plan of Dennysville by Benj. R. Jones.

The defendant put in a deed from the plaintiff to one Wilder, which contained this description : " a certain lot or parcel of land in Dennysville aforesaid, containing two hundred and eighteen acres, more or less, bounded partly by lot numbered 53, partly by Abner Gardiner lot, and partly by the shore of Dennys river, said premises being the lot numbered 52, on the plan of said town of Dennysville, by Benj. R. Jones, which plan is now recorded in the registry of deeds for Washington county, reference being had to said plan," and a deed, with the same description from said Wilder to him. The plan referred to was introduced, and it appeared that it was made before the conveyance from said Russel to plaintiff; that in running out all the lots lying on Dennys river, said Jones measured the lines to the water in said stream ; that the western boundary of lot numbered 52, by said plan, is Dennys river ; that said river is a fresh water stream, and the boundary between that and the adjacent town.

It appeared that the defendant was owner of the land lying

in Edmunds, opposite to said lot numbered 52 in Dennysville, to the centre of said Dennys river and in occupation of the same ; and that in 1846, he erected valuable dams and mills on said river, from his land in Edmunds, across to and upon that part of Dennysville described as lot numbered 52.

The plaintiff notified defendant, when about to commence building said dams and mills, of his claim to the premises.

It was agreed, that the *Court* might reject any of said evidence not legally admissible, might make such inferences as a jury might do, and order a nonsuit or default, as the application of the principles of law to the facts stated should require.

The case was argued in writing. The arguments were much extended. An epitome is all for which space can be allowed in this volume.

*S. Greenleaf, of Massachusetts*, for plaintiff.

The *subject* of controversy in this case is a strip of land, lying between the shore and the central line of Dennys river.

It was once the plaintiff's. The defendant claims title under the plaintiff's grant. This grant was of "a parcel of land," "bounded "*by the shore of Dennys river*," being lot numbered fifty-two on the plan." The plaintiff claims that by this deed, the grant is limited to *the shore*. The defendant claims that it extends to the *filum aquæ*.

We do not controvert that where a grant is *expressly* bounded by or upon a fresh " river" or " stream," or along the same, the *presumed intent* of the grantor was, to convey the land to the thread of the river or stream ; in which cases it is therefore said that the grantee is entitled to hold to that extent, of common right.

Such intent is presumed, wherever the "*river*" or "*stream*" is *expressly mentioned* as a boundary, even though other monuments are mentioned, standing on or near the bank, *if there are no words showing a different intention*. The decisions to this effect are founded wholly on the *express mention* of ·the river or stream as the boundary.

But this presumption of intent is controlled and the grant

limited, so as to exclude the river or stream, whenever an intent to exclude it is apparent from the deed.

In this case, we contend, the grantor, by *expressly* bounding the grant by the *" shore,"* intended to *exclude the river*.

The word shore has already received a judicial interpretation. 5 Wheat. 385. " The *shores* of a river *border* on the water's *edge."* And elsewhere the *shore* of a fresh river has been defined to be the part between high and low water mark, *exclusive* of the *alveus fluvii*, or bed of the river.

The words *" to," "from"* and *" by,"* in the description of the premises in a deed, are held to be words of exclusion, unless, by manifest implication, they are used in a different sense. If the boundary is a *" river," " stream"* or *" creek,"* and is *so expressed*, the *expression* is taken to imply an intent to *include* the river to the thread thereof. But if the boundary mentioned is the *bank* of the river, the words *to, from* and *by*, are held to *exclude* the water, or rather the land below high water mark.

The case of *Moore* v. *Griffin*, 9 Shep. 350, 353, as to this point, was decided expressly on this distinction.

The plaintiff limited his grant to the shore, and therefore has not parted with the land in dispute, unless by referring to the plan.

The question is upon the language of the deed, and not upon the actual location. What does *the plan itself* say? This is purely a question of interpretation.

It will doubtless be contended for the defendant, that the deed and plan together present a case of ambiguous language, to be taken most strongly against the grantor; and that by the plan, lot 52 appears *bounded by the river*.

To this we have several considerations to suggest, by way of answer : —

1st. It does not so appear by the plan. One of the lines does appear nearly or quite to touch the line denoting the course of the river or the bank, it being obscure. The other appears to stop short of it. But if both lines touched the waving line on the plan, it would still remain uncertain

whether the lines on the plan, denoting Dennys river, in a *general* manner, were designed to represent the lines of the *bank or shore*, at high water mark, that is, the *edges* of the trough or canal in which the water flowed, or were intended to denote more strictly the *breadth of water* within those limits. If the defendant claims the latter, the burden of proof is on him to show it. But it *does not* appear *by the plan;* and therefore is not in the case. There is no evidence, that lot 52 was ever bounded in fact by Dennys *river.* If the deed had referred to the *plan alone*, it being ambiguous, and doubtful whether the crooked lines were intended for the "*banks*" or for the actual margin of the *water*, it might well be taken most strongly for the grantee, to carry him to the "*river.*" But here the descriptive words in the deed must go along with the plan, and both be made if possible to stand together. The plan merely suffices for general description and relative locality, and the words in the deed serve for more particular and exclusive limit.

2d. It is a sound rule of interpretation of private writings, that where the instrument consists partly of a printed *formula* and partly of *written* words, greater effect is to be given to the latter, as being selected by the parties for the *more precise expression of their meaning*, the printed part being more general in its nature and application. 1 Greenl. on Evidence, § 278, and cases there cited. See also *Alsager v. St. Katherine's Dock Co.*, 14 M. & W. 799, *per Parke B.*

Now *here* the parties themselves have industriously employed *their own* language for the *particular* description of the premises, referring to the plan, as in the nature of a printed *formula*, on which less attention is bestowed. Where the plan is of a public and general character, like the plan of a town or other large tract, it is to be admitted into the deed only on the footing of a printed formula.

3d. In construction of conveyances, the *highest* regard is to be had to natural *boundaries;* for respecting these men are least liable to mistake. See 1 Greenl. on Evidence, § 301, note 2, 3d ed.

In this deed *two* boundaries are called for; namely, the "*shore*," which is a *natural* boundary; and the *line marked on Jones's plan*, which is an *artificial* boundary.

The interpretation, thus given to the deed, gives *full effect* to the *plan* and to *every word* of the deed; rejecting nothing.

The defendant's construction *totally rejects* the important boundary of the "*shore*," and runs counter to all the principles above stated.

If the plan was referred to for any other than general purposes, it would seem that boundaries would have been particularly expressed in the deed.

*Bion Bradbury* and *T. J. D. Fuller*, for defendants.

If, by the plan, lot 52 extends to the centre of Dennys river, the plaintiff has shown that he once had a title to the land, which he claims; but, if not, he exhibits no title to this land, and cannot maintain this suit. But if, by the plan, that lot extends to the centre of the river, then, as the plaintiff conveyed by that plan, he has no case.

The defendant contends that this grant conveys the whole of lot 52, according to the plan; extending to the centre of Dennys river.

1. The plan referred to in plaintiff's deed, is to be taken as part of the deed. *Pike* v. *Dyke*, 2 Greenl. 213; *Brown* v. *Gay*, 3 Greenl. 126; 5 Greenl. 24. Where lines are laid down on a map or plan, and are referred to in a deed, the courses, distances and other particulars appearing on such plan are as much to be regarded as the true description of the land conveyed, as they would be if expressly recited in the deed. *Thomas* v. *Patten*, 13 Maine, 333; 17 Mass. 207; 20 Pick. 62; 21 Pick. 135.

But the plaintiff's counsel contends that where the plan is of a public and general character, like the plan of a township or other large tract, it is admitted with the deed only on the footing of a printed formula, not attracting the attention of the parties so closely as their own words have done; and, therefore, not entitled to control them.

But, in this case, the plan was evidently the matter most considered; the prominent idea of the description.

It appears that this plan was the result of an actual survey. The general concluding words, "reference being had to the plan," relate back to the whole of the descriptive language of the deed.

2. By the plan, the lot numbered 52 extends to Dennys river, and is bounded on its westerly side by that stream.

The river is represented on the map by a crooked, waving line. The side lines of the lot extend to it and touch it. A line has length, but no breadth or thickness. The side lines, touching the line representing the river, must of course touch the water of the river. As these lines extend to the water's edge, the lot must of necessity extend to the centre of the river. Neither of the side lines appear by the plan to stop short of the line representing the river, as stated by plaintiff's counsel.

The language of the statement of facts is, "it appeared that the plan was made before the conveyance from said Russell to plaintiff; that in running out all the lots lying on Dennys river said surveyor measured the lines to the water in said stream; that the western boundary of said lot, numbered 52 by said plan, is Dennys river; that said Dennys river, was the boundary between Dennysville and Edmunds, or townships numbered two and ten."

3. In the case of a fresh river, every possible intendment is in favor of the grant going to the centre, whereas, in the case of the sea, the intendment is directly otherwise. Angell on Water Courses, (2d Ed.) page 8, note 1.

4. The only mode, by which any portion of the bed of a river can be retained in the grantor of a tract of land adjacent to the river, is by a reservation clearly made in the deed. Angell on Water Courses, (2d Ed.) pages 2—6.

5. The owner of land adjacent to a fresh river, owns to the centre of the stream, of common right. The right is incident and annexed to the grant by the common law.

6. With these considerations before us, we may now inquire

what was the intention of the parties to this grant? Did not the plaintiff intend to convey the whole of lot 52?

From the language of the deed, this is apparent. It conveys " a certain lot containing two hundred and eighteen, acres more or less," (not a portion of a certain lot) " said premises being the lot numbered fifty-two on the plan of said town of Dennysville (late township No. 2.)"

Upon inspecting this plan, we find a lot numbered 52, that it contains 218 acres, that its western boundary is Dennys river.

Here, then, is a clear, distinct and perfect description of a tract of land, with the centre of Dennys river as its western boundary.

But the deed also contains other language. Before the reference to the particular lot and plan, the land conveyed is described as bounded " partly by the shore of Dennys river." Is there any necessary conflict between this and the other language of the deed? May not the whole be construed in perfect consistency?

It may be here remarked, that the description by boundary is not intended to be accurate and certain. If it were so, why need there be any reference to the lot and plan? It is designed only to convey a general idea of the location of the lot, with reference to other lots on the river. Its indefiniteness indicates this. The term "partly" is entirely uncertain; it may mean any portion less than the whole. The lot 52, as indicated by the plan referred to, is evidently the leading idea in the minds of both parties.

Now upon the hypothesis that the words " shore of Dennys river," were used in this grant to mean the same thing as Dennys river, the deed receives a construction giving full effect to its entire language — rejecting nothing.

The subsequent use of the terms " Dennys river," where the " shore of Dennys river" had been previously adopted, clearly indicates that the parties applied an equivalent meaning to these expressions. It was the same idea expressed in different language.

If the word shore, as applied to fresh rivers, has a technical meaning, it is not necessary to adopt it where it was evidently not so used by the parties.

Where the intention is clear, too minute a stress ought not to be laid on the strict and precise signification of words. Cruise's Digest, chap 19, § 1, clause 4 ; 2 Saund. 167 ; 3 Johns. 395.

Further there is no language used in this deed, which indicates an intention to reserve any portion of lot 52.   Had there been a design to reserve the bed of Dennys river, it would have been clearly indicated.

The plaintiff purchased this tract on the 15th of April, and sold on the 30th of April, 1824, being the owner for fifteen days, buying and selling by Jones's plan.

But it is alleged by the plaintiff, that the word shore has a technical meaning which must be adopted in this case, and that its use indicates an intention to restrict the grant to the upland of lot 52.

The sea shore has been judicially defined in *Storer* v. *Freeman,* as being that portion of land, lying between ordinary high and low water mark. In the 3d Shepl. 237, it was held synonymous with beach.   But it is believed no judicial construction has been given to the term, as applied to a fresh river.   This seems to be taken for granted by Angell, in his work on Tide Waters, 2d edition, page 67.

We must, therefore, resort to other sources for a definition of this term.

No analogy exists between the sea shore and the shore of a fresh river.   Entirely different principles apply to them.

Regarding Webster as authority, we find the meaning of the term shore, evidently restricted to tide waters.

It seems agreed on all sides, that the shore touches the water. It is conceded by plaintiff's counsel, that a grant of land bounded " by," " upon," or running " to" a river, carries the grantee to the centre of the stream, and that these expressions are taken to imply an intent to include the river.

But why is this intent implied ?   Because the common law,

Lincoln *v.* Wilder.

assigning ownership to every thing capable of it, and from motives of policy makes the owner of land, adjacent to a fresh river, the owner to the centre. If your boundary is by, to, or upon the river, the title to the centre passes. The shore, margin or bank touches *the river*, why should not the same title pass? Especially when every possible intendment is in favor of extending a grant upon a fresh river to the centre, as has been shown.

But if the term shore has a technical meaning, to be applied in this case, it presents a case of ambiguity or double description.

In discussing this part of the case, we are aided by certain well established rules, some of which are laid down with great clearness, in the case of *Melvin* v. *Proprietors of Locks and Canals on Merrimack river,* 5 Metc. 15.

Now, in this case, the inconsistency results from the word shore, upon the supposition that the term excludes the bed of the river. Aside from the use of this term, the description of the estate conveyed is clear and " unmistakeable." Upon the principle just stated, it may be rejected.

Again, if some of the particulars of the description of the estate conveyed do not agree, those which are uncertain or liable to mistake must be governed by those which are more certain.

The description in this case derived from the plan, is fixed and certain. But the meaning of the term shore is uncertain.

Again, if there be a double description in a grant, or an ambiguity, the grant is to be construed most strongly against the grantor.

Upon this principle, the title of the defendant, would extend *ad filum aquæ.*

The attention of the Court is particularly called to the cases of *Vose* v. *Handy,* 2 Greenl. 322 ; *Keith* v. *Reynolds,* 3 Greenl. 393 ; *Willard* v. *Moulton,* 4 Greenl. 14 ; *Drinkwater* v. *Sawyer,* 7 Greenl. 366, in this connection.

In *Moore* v. *Griffin,* the general description precedes the

particular one ; in *Herrick* v. *Hopkins,* the particular description precedes the general one.

From these cases, the principle is derived, that, where, in a grant of land, general terms are used, in themselves clear and explicit, clearly describing an estate to be conveyed, those terms will control any description inconsistent therewith, being construed most favorably to the grantee.

It is suggested by plaintiff's counsel, that the boundary of the shore, being a natural boundary, is entitled to more consideration than the boundary established by Jones's plan, which is artificial. But is this so ? The boundary by Jones's plan is Dennys river. If it is not, the plaintiff has no case. Dennys river is a natural boundary. The plan but represents a natural boundary.

WELLS, J. — The demandant claims to recover a portion of lot 52, in Dennysville, lying between the shore and the centre of Dennys river. It appears by the statement of facts, that his title is derived from James G. Russell, and that lot 52, according to the plan of Dennysville, by Benjamin R. Jones, is one of the lots described in the deed. Whether he has a title from any other source does not appear. It is contended by him that the side lines on Jones's plan do not extend to the water, and that the plan does not embrace the territory between the shore and the centre of the river. If so, unless he has some other title than that disclosed, then he is not the owner of the demanded premises. If he claims by the plan, and that does not embrace the premises, he cannot recover.

But according to the copy of the plan furnished by the tenant's counsel, the side lines appear to be extended in the usual manner to the water. It does not exhibit any different appearance from other plans where lots are bounded by rivers. If it had been intended by Jones, not to embrace the space between the shore and the centre of the river, in lot 52, he would probably have made his plan, so as clearly to indicate that intention.

Whatever title the tenant has, is derived from the demandant, through E. C. Wilder, who conveyed to him the same, which was derived from the demandant.

No copies of the deeds have been furnished. The description of the premises, granted by the demandant to Wilder, is obtained from the arguments of the counsel. It is as follows: "a certain lot or parcel of land, in Dennysville aforesaid, containing two hundred and eighteen acres, more or less, bounded partly by lot numbered fifty-three, partly by Abner Gardner's lot, and partly by the shore of Dennys river, *said premises being the lot numbered fifty-two on the plan of said town of Dennysville,* (late township No. 2,) by Benjamin R. Jones, which plan is recorded in the registry of deeds for Washington county, reference being had to said plan."

Land, bounded by the shore, limits the grantee to it, and does not extend over it. *Storer* v. *Freeman,* 6 Mass. R. 435; *Lapish* v. *Bangor Bank,* 8 Greenl. 85; *Handly's lessee* v. *Anthony,* 5 Wheat. 385; *Nickerson* v. *Crawford,* 16 Maine R. 245. The use of such a term manifestly excludes the bed of the river. *Child* v. *Starr,* 4 Hill, 369. And if it were the intention of the demandant, by the deed, to limit the western boundary by the shore, then he would be entitled to the land, between the exterior line of the shore, and the *filum medium aquæ.*

Where land is conveyed according to a plan, to which reference is made in the conveyance, it becomes a part of it, as much so, as if it were incorporated in the conveyance. This is a well established rule of construction. The demandant says in his deed, "said premises being the lot numbered fifty-two on the plan," &c. He makes the plan a part of his deed. *Davis* v. *Rainsford,* 17 Mass. R. 211.

The plan bounds the lot, on the west, by the river, and is to be viewed in the same manner as a deed, bounding a grant by a river. In such case it is stated, in *Storer* v. *Freeman,* which is supported by a long and unbroken series of decisions, "that the owner of land bounded on a fresh water river, owned the land to the centre of the channel of the river, as of common

right." If then the demandant intended by the deed, to convey the land according to the plan, the premises demanded belong to the tenant.

The intention of the grantor is to be carried into effect, if it can be ascertained. Did he intend to limit the grant to the shore, or in accordance with the plan, to extend it to the thread of the river?

General and comprehensive words may be restrained by particular words following them. *Roe* v. *Vernon*, 6 East, 51 ; *Moore* v. *Griffin*, 22 Maine R. 350. But in the present case, the particular words, creating the restriction, if there be any, precede the general ones.

In the case of *Thorndike* v. *Richards*, 13 Maine R. 430, the general description was limited by the particular one, following it ; and the same mode of construction was adopted in *Allen* v. *Allen*, 14 Maine R. 387, and *Barnard* v. *Martin*, 5 N. H. R. 536.

In *Keith* v. *Reynolds*, 3 Greenl. 391, there was a general description, but the courses and distances, which followed, did not embrace all which was contained in the general description. But the general description was adopted. So also in the case of *Moore* v. *Griffin*, before cited, the particular words were not considered, as limiting the grant to the shore of the river.

In the case of *Cate* v. *Thayer*, 3 Greenl. 71, by the act incorporating the town of Dresden, the courses and distances would exclude the farm of Dr. Gardiner, but the act declares it is to be included. And it was decided to be included. In the case of *Melvin* v. *Proprietors of L. & C. on Merrimack river*, 5 Metc. 15, the conveyance was of the " estate on which the said Moses Cheever now lives, and which was conveyed by Benjamin Melvin and Joanna Melvin to Dr. Jacob Kittridge, by deed dated the 25th day of April, 1782." The description in the deed did not contain so much land, as was embraced in the farm occupied by Cheever. The reference to the deed from the Melvins was not considered as limiting the land previously described. The mode of construction, adopted in the cases of *Barnard* v. *Mar-*

*tin,* before cited, and *Woodman* v. *Lane,* 7 N. H. R. 241, is not in harmony with that laid down in the 5th Metc.

The rule is quite plain, that a general description may be affirmed or restricted by a special one, but the difficulty consists in the application of it, and in determining whether the language employed is intended to be used, in a restrictive sense; and it is difficult to find any precise rule, furnishing a sure and unerring guide in such inquiry.

It is also apparent, that the mere arrangement of the words, the same sense being preserved, can make no difference in the result.

The leading idea, to be obtained from the cases is, that what is more certain shall prevail over that, which is less so, and the part of a description, which the parties must be supposed fully to understand, will triumph over that, which is more obscure, and whose delineation would require a more accurate and careful examination. As monuments are generally decisive, that which approximates more nearly to them, has a controlling influence.

In the description under consideration it is stated, " said premises *being the lot* numbered fifty-two on the plan," &c. According to the demandant's construction, it was *a part* only of the lot conveyed. If the whole lot had not been intended to be conveyed, one would suppose, that a part of it would have been expressed, or some exception made. The deed and the plan correspond in the number of acres; but the deed says more or less. All the boundaries could not be found without reference to the plan. There is no other way of finding the eastern side, but by reference to it. It is a map of the premises, and would clearly indicate what was granted.

In *Cate* v. *Thayer,* before cited, in the description of the boundaries of Dresden, C. J. MELLEN says, the Gardiner farm is a monument. In the same sense, lot fifty-two is a monument, it being truly described by the plan. The courses laid down did not include the Gardiner farm, and the course, " partly by the shore of Dennys river," would not include lot fifty-two. But the Gardiner farm was considered within the

town. So also, for the same reason, the lot would pass by the conveyance.

Yet it may be correctly said, that the shore is a monument also, and not a course indicated by the compass. Then there would be two monuments, incompatible with each other. By the same rule, we are to ascertain, which of them is the more certain and the more prominent.

Where a person purchases a lot, according to a plan, he must understand, that he would obtain the whole lot, in the same manner as other lots were granted, in the township. But if the deed described a portion of it, as bounded by the shore of a river, it might not attract his attention so forcibly as the plan, or he might misapprehend the meaning of it.

Although it may be difficult, to arrive at a satisfactory conclusion, we are inclined to the determination, that the plan is the more certain and prominent part of the description.

But if the expressions of a deed are contradictory, creating so much doubt, that it cannot be known, which of two descriptions is the true one, the deed is to be construed most favorably to the grantee.

In the case cited from the 5th of Metc. it is said, " that where there is a doubt as to the construction of a deed poll, it shall be taken most favorably for the grantee. If, therefore, there be two descriptions of the land conveyed, which do not coincide, the grantee is entitled to hold by that, which will be most beneficial to him. It must, however, be a case of real doubt; for if one of the descriptions be more certain than the other, the more certain description must govern, although the construction may be less favorable to the grantee."

In a deed poll, where there is a doubt, the construction must be against the grantor. *Worthington* v. *Hyler*, 4 Mass. R. 205. Where a deed may enure in different ways, the person to whom it is made, shall have his election which way to take it. *Jackson* v. *Blodget*, 16 Johns. 178. The descriptions of the western boundary, in this deed, are clearly repugnant. The plan bounds the premises by the thread of the river, the other description by the shore, and there is no language in the latter, limiting the former.

If one description is not more certain than the other, then it is a case of doubt, as to which shall be adopted, and falls within the rule of construction most favorable to the grantee, and the whole of the lot is conveyed. It results from either view, that the tenant is entitled to judgment.