A. M. HAGAN *v.* NASHVILLE TRUST COMPANY *et al.*\*

(*Nashville.*  December Term, 1910.)

1. DAMAGES.  Lost profits are recoverable for breach of con-
   tract, unless speculative, remote, or not contemplated.

Profits lost by the wrongful breach of the contract upon the part
of the defendant will be allowed in ascertaining the damages
for such breach, unless they are speculative, remote, or not
contemplated by the contract.  (*Post, pp.* 98-103.)

Cases cited and approved:  Chisholm v. .Canopy Co., 111 Tenn.,
202;  Howard v. Manufacturing Co., 139 U. S., 199.

2. BROKERS.  Same.  Commission contract fixing rate for all
   sales made within a certain period, when breached, entitles
   the agent to such commissions on sales made within that time,
   though made by others, when.

Under a contract allowing a real estate broker a fixed rate of
commission on all sales of land made with five years, con-
strued to embrace all sales made within that time whether
made by him or not, which commissions were to compensate
him for other valuable services not requiring his whole time or
any certain part of it, the broker is, upon the wrongful breach
of the contract by the other party, entitled to commission on
all sales made within that period, though they were effected
by the combined efforts of nearly all the real estate agents
in the city of Nashville, especially where such broker was
ready at all times to go forward with his part of the contract
and to fulfill the obligations imposed upon him thereby; for

*As to loss of profits as element of damages for breach of con-
tract, see notes in 53 L. R. A., 34; 3 L. R. A. (N. S.), 709; 8
L. R. A. (N. S.), 255; 4 L. R. A. (N. S.), 740; 18 L. R. A. (N. S.),
613; 19 L. R. A. (N. S.), 155.

such damages are not speculative or remote, and were contemplated by the contract (*Post,* pp. 95, 96, 99-103.)

Cases cited and approved: Chisholm v. Canopy Co., 111 Tenn., 202, 230.

3. **DAMAGES. Speculative at time of suing, but becoming ascertainable and fixed before the trial, are recoverable for wrongful breach of contract.**

Where the profits were speculative damages at the time of the filing of the bill, but became ascertainable and fixed before the trial by the expiration of the time fixed for the performance of the contract, such profits are recoverable for the wrongful breach of the contract by the other party. (*Post, pp.* 97, 100, 101, 103.)

4. **BROKERS. Real estate agent is not entitled to commissions on improvements erected on land sold by the owner, where not contemplated in the contract, when.**

A real estate broker, employed at a fixed rate of commission, to sell lands and houses for a fixed term, is not entitled, upon a wrongful breach of the contract by the landowner, to recover commissions upon the value of the improvements erected upon the land sold by the owner because such damages were not within the contemplation of the parties when the contract was made. (*Post, pp.* 95, 96, 104.)

---

## FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson County. —JOHN ALLISON, Chancellor.

PARKS & BELL, for complainant.

VERTREES & VERTREES, for defendants.

MR. JUSTICE GREEN delivered the opinion of the Court.

The Belmont Land Company was the owner of a tract of land in the suburbs of Nashville, which it wished to develop and put on the market.

The Land Company entered into an arrangement with the Nashville Trust Company, by which the latter was to finance the improvement and marketing of this property.

The Nashville Trust Company was appointed the agent and attorney in fact for the Land Company, with full authority in the premises.

In order to sell this property to advantage, it was thought necessary to open up streets or avenues through it, to build sidewalks, and to erect houses and make other improvements.

The Nashville Trust Company, wishing an agent to superintend this work, as well as to push the sales of the property, entered into negotiations with A. M. Hagan, a real estate agent of the city of Nashville.

As a result of negotiations, on July 15, 1901, the Trust Company and Mr. Hagan entered into a contract whereby the latter agreed, for a term of five years, to advertise said property at the expense of the owners, to solicit buyers and customers, to make sales of lands and houses, and to superintend, under the directions of the Trust Company, the construction of roads, houses, and other improvements that the said Trust Company might see proper to make on the said property.

The contract then provided:

"For the services as agent, as aforesaid, the said party of the second part (Hagan) is to be paid two and one-half (2½%) per cent. on all sales made of said property."

At the beginning of negotiations between Mr. Joseph Thompson, the president of the Nashville Trust Company, and Mr. Hagan, it was proposed to Mr. Hagan by written contract that he receive for his services as agent a commission of 2½ per cent. "on all sales made by him of said property;" but this was declined, and the contract made as above set out.

This contract, as has been stated, was dated July 15, 1901, and by its terms was to continue five years. The parties operated under this contract for about two years. Mr. Hagan did not make as many sales as the Land Company thought he should have done. The property was not at that time selling rapidly.

Some correspondence was had between Mr. Hagan and the officers of the Land Company relative to a change of the provisions of this contract. Nothing resulted from these negotiations, however.

So it turned out that, about two years from the date of the execution of the contract, the Land Company, being dissatisfied with Mr. Hagan's services, discharged him.

Mr. Hagan insisted that he was ready at all times to go forward with his part of the contract and to fulfill the obligations imposed on him thereby. This is not seriously controverted. The Land Company does not

impeach the willingness of Mr. Hagan, but it questions his efficiency.

After being discharged, Mr. Hagan brought suit against the Land Company for damages, on September 21, 1904. The contract between him and the company expired, according to its terms, on July 15, 1906. The hearing of this cause was delayed nearly two years after the time fixed for the expiration of the contract. The decree below was pronounced on April 27, 1908.

It is, therefore, seen that at the date of the trial before the chancellor, the time for the completion of the original contract had long since expired. The chancellor had an account taken of all sales made by the company within the five years, and allowed the complainant a recovery of $2\frac{1}{2}$ per cent. on such sales, less some credits by commission already paid him. The amount of the complainant's decree was $1,945.44.

After Mr. Hagan was discharged, the Land Company put this property in the hands of nearly all the real estate agents in Nashville, and the sales afterwards made by it were accomplished as the result of the combined efforts of all these agents.

The chancellor's decree, therefore, allowed to the complainant a commission of $2\frac{1}{2}$ per cent. on the sales made as a result of the efforts of practically all the real estate men in Nashville.

This seems a hard decree, and we have given it much consideration.

We think, from an examination of the record, that the

Land Company breached its contract with Mr. Hagan, and that he is entitled to damages; but for the Land Company, in the language of its counsel, "it is further insisted that, even if he were discharged wrongfully, he can recover nothing from the defendant, by way of damages on account of the breach of the contract, more than merely nominal damages, because such damages as he claims are speculative, uncertain, and contingent, and are not expressly stipulated or provided for in the contract, and because the uncertainty as to the amount is not removed by the terms of the contract itself."

(1) We may say here that we agree almost entirely with appellant's counsel in the statement of the law contained in his brief. He has set out clearly and forcibly the correct rules to be deduced from Tennessee decisions. The difficulty arises in the application of these principles to the facts of this case.

A much quoted epitome of the law on this subject is the expression of Mr. Justice Lamar, speaking for the supreme court of the United States, with which our own cases are in accord. The language is as follows:

"The authorities, both in the United States and England, are agreed that, as a general rule, subject to certain well established qualifications, the anticipated profits prevented by the breach of a contract are not recoverable in the way of damages for such breach; but in the application of this principle the same uniformity in the decisions does not exist. In some cases, of almost exact analogy in the facts, the adjudications of the courts in

the different States are directly opposite.  The grounds upon which the general rule of excluding profits, in estimating damages, rests are (1) that in the greater number of cases such expected profits are too dependent upon numerous uncertain and changing contingencies to constitute a definite and trustworthy measure of actual damages; (2) because such loss of profits is ordinarily remote, and not, as a matter of course, the direct and immediate result of the nonfulfillment of the contract; (3) and because most frequently the engagement to pay such loss of profits, in case of default in the performance, is not a part of the contract itself, nor can it be implied from its nature and terms.  Sedgwick on Damages (7th Ed.), vol. 1, p. 108; The Schooner Lively, 1 Gall., 315, 325 [Fed. Cas. No. 8,403], per Mr. Justice Story; The Anna Maria, 2 Wheat., 327, 4 L. Ed., 252; The Amiable Nancy, 3 Wheat., 546, 4 L. Ed., 456; La Amistad de Rues 5 Wheat., 385, 5 L. Ed., 115; Smith v. Condry, 1 How., 28, 11 L. Ed., 35; Parish v. United States, 100 U. S., 500, 507, 25 L. Ed., 763, 766; Bulkley v. United States, 19 Wall., 37, 22 L. Ed., 62.  But it is equally well settled that the profits which would have been realized had the contract been performed, and which have been prevented by its breach, are included in the damages to be recovered in every case where such profits are not open to the objection of uncertainty or of remoteness, or where from the express or implied terms of the contract itself, or the special circumstances under which it was made, it may be reasonably presumed that they

were within the intent and mutual understanding of both parties at the time it was entered into. *United States* v. *Behan,* 110 U. S., 338, 345, 346, 347 (4 Sup. Ct., 81) 28 L. Ed., 168, 170 171; *Western U. Teleg. Co.* v. *Hall,* 124 U. S., 444, 454, 456 (8 Sup. Ct., 577), 31 L. Ed., 479, 483; *Philadelphia, W. & B. R. Co.* v. *Howard,* 13 How., 367, 14 L. Ed., 157." *Howard* v. *Stillwell and Bierce Mfg. Co.,* 139 U. S., 199, 11 Sup. Ct., 500, 35 L. Ed., 147.

See review of the Tennessee cases by Mr. Justice Neil in *Chisholm* v. *Canopy Co.,* 111 Tenn., 202, 77 S. W., 1062.

From the statement of the law as contained in *Howard* v. *Stillwell-Bierce Manufacturing Company,* supra, it will be seen that profits are to be allowed in ascertaining damages for breach of contract, unless they fall under one of three heads mentioned; that is, unless they are speculative, remote, or not a part of the contract.

Are these profits decreed to Hagan speculative?

They are not. They are capable of precise ascertainment. He was to be allowed a fixed commission on all sales made of this land within the five years, and the amount brought by the land sold during that period was shown at the hearing. These profits were speculative at the date of the filing of this bill; but the trial was delayed until after the time fixed for the performance of the contract, and at that time proof could be adduced, and was adduced, to establish with certainty and to the dollar the exact amount of two and one-half per cent. on all the sales during the five years. This practice is

allowable, under the authority of the cases referred to by Mr. Sutherland in his work on Damages (volume 1, sec. 120).

The damages claimed are not remote, and it is not so insisted.

The question then remains as to whether this contract contains or implies an engagement to pay such loss of profit in case of a breach by the defendants.

In referring to the rule of law relied on by the defendants here, that where two parties have made a contract, which one of them has broken, the contract itself must give the measure of damages, otherwise the damages can only be nominal—referring to this, Mr. Justice Neil observes:

"This is merely a brief statement of the rule in *Hadley* v. *Baxendale,* that 'where two parties have made a contract, which one of them has broken, the damages which the other party ought to receive in respect of such breach should be either such as may fairly and reasonably be considered as arising naturally (i. e., according to the usual course of things) from such a breach of the contract itself, or such as may reasonably be supposed to have been within the contemplation of both parties at the time they made the contract as the probable result of the breach of it.' The contract thus gives the measure of damages upon the first branch of the rule by the mere statement of its terms, its subject-matter, and the obligations of the parties." *Chisholm* v. *Canopy Co.,* 111 Tenn., 202, 230, 77 S. W., 1062, 1069.

Under the terms of this contract, Hagan obligated himself to solicit buyers, make sales, superintend, and perform other services set out in the contract.

For these services the Land Company agreed to pay to him two and one-half per cent. on all sales made of said property. This was the obligation it assumed.

This contract did not provide that Hagan should give his whole time to the company's service, nor that he should have commissions merely on sales made by him. So that, until Hagan himself breached the contract, the company, by this writing, obligated itself for five years to pay him this per centum on all sales made of this land. As long as Hagan stood ready to comply with his obligations, the company could not, by repudiating its obligations, escape the liability imposed upon it by the contract.

So, we are forced to the conclusion that this contract itself contained the measure of Hagan's damages in case of default by the company.

If the company had employed him on a salary for five years, to devote such of his time as was necessary to the development of this property, and had then breached its contract, Hagan standing ready to perform it, it cannot be doubted that under such a contract the measure of Hagan's damages would have been his salary for the unexpired term of the contract following the breach. So, when he was to be paid commission on all sales made within five years for like services, he is entitled, upon the company's default, to recover commissions on sales

made, after his wrongful discharge, during the remainder of the term; he standing ready to perform his part of the contract.

The only difficulty that could arise in the latter case would be the uncertainty of the amount of the sales and the consequent commissions. This difficulty does not arise here, however, since the trial of the cause was delayed until after the expiration of the five-year term, and the amount of the sales was definitely shown.

This is not like the cases of traveling salesmen selling on commission and wrongfully discharged before the expiration of their contracts, to which we have been referred. In those cases commissions were to be paid on sales made by the drummers themselves.

Here, by the very terms of the contract, the commission was to be paid Hagan on all sales, whether made by himself, by other real estate agents, or by the company's officers.

We are prevented from considering whether Hagan could have made as many sales as all the other real estate agents combined, who were employed by the company to handle this property. We do not think he could; but that makes no difference here; for, under the terms of his contract, he was to have commissions on all sales, whether made by him or not. So, the element of uncertainty that would enter into a suit brought by him for damages for wrongful discharge, had he only been promised the exclusive right to make these sales and

commissions on such sales made by him, is entirely removed by this contract.

This contract is unusual, and perhaps improvident; but it is very plain. While its enforcement may seem hard, there is no escape from its provisions.

Mr. Hagan also appealed from the chancellor's decree, and assigns as error that the chancellor did not allow him commissions on the improvements put upon the property sold by the Land Company.

Without discussing this contention at length, we conclude, after a full examination of the record, that such damages as these ought not to be allowed here. We do not think they were within the contemplation of the parties.

As intimated before, we are not disposed to extend this contract any further than its provisions require. The result is that the judgment of the court below will be affirmed. The costs below will be paid as adjudged by the chancellor, and the costs of this court will be equally divided between the parties.