963 F.2d 332
 David LINDER, Elisabeth Linder, individually and as
Co-Personal Representatives of the Estate of
Benjamin Linder, John Linder, Miriam
Linder, Plaintiffs-Appellants,
v.
Adolfo Calero PORTOCARRERO, et al., Defendants-Appellees.
 No. 90-5862.
 United States Court of Appeals,
Eleventh Circuit.
 June 17, 1992.
 
 Michael Ratner, Center for Constitutional Rights, New York City, for plaintiffs-appellants.
 William M. Walker, ACLU Foundation of Southern California, Los Angeles, Cal., for amicus-ACLUS of So. Cal.
 Carl R. Schenker, Jr., O'Melveny & Myers, Washington, D.C., Margaret Laura Ratner, Center for Constitutional Rights, New York City, Jules Lobel, Univ. of Pittsburgh Law School, Pittsburgh, Pa., for amicus-Intern. Human Rights Law Group.
 Franklin Burt, Tew, Jorden & Schulte, John E. Kirkpatrick, Miami, Fla., for defendants-appellees.
 Appeal from the United States District Court for the Southern District of Florida.
 Before FAY, Circuit Judge, DYER and CLARK*, Senior Circuit Judges.
 DYER, Senior Circuit Judge:
 
 
 1
 In this diversity action, plaintiffs appeal the dismissal of an amended complaint seeking damages against the defendants Adolfo Calero Portocarrero, Enrique Bermudez Varela, Aristides Sanchez Herdocia and Indalecio Rodriguez Alaniz, and three organizations, the Nicaraguan Democratic Force, the United Nicaraguan Opposition, and the Nicaraguan Resistance, controlling the Nicaraguan anti-government military forces (contras), for targeting for attack Benjamin Linder, an American citizen working in Nicaragua, and in subsequently causing his capture, torture and murder during the civil war between the Sandanistas and the contras. Although the complaint is prolix and overbroad in many respects, we conclude that the allegations of Florida tort liability state a claim upon which relief may be granted, and we therefore reverse.
 
 The Allegations of the Amended Complaint
 
 2
 Plaintiffs ask us to disregard most of the averments of the amended complaint as surplusage and confine our attention solely to the following allegations: After graduating from college with a mechanical engineering degree in 1983, Linder, as a civilian, went to remote areas of Nicaragua to construct dams and hydroelectric plants. He chose San Jose de Bocay, a town that had never had electricity, as a plant site. In April 1987, Linder went to the site with six co-workers. He wore civilian clothes and carried a rifle. His co-workers were volunteers from a local farming cooperative. Some wore military uniforms and carried guns because, although not Nicaraguan Army soldiers, they were civilian Self-Defense Militia members. Lying in ambush were at least a dozen members of the Nicaraguan Democratic Force (FDN). After Linder and his co-workers put down their rifles and began their work, the FDN patrol attacked them with grenades and machine guns. The patrol shot Linder through both of his legs and his left arm, immobilizing but not mortally wounding him. While he lay defenseless, patrol members tortured him by stabbing him thirty to forty times in the face. He was then executed by shooting him through the temple from a range of less than two feet.
 
 
 3
 This planned attack on Linder was allegedly part of a policy, pattern and practice of widespread torture targeted at development workers and development projects for the purpose of destroying the projects and terrifying other development workers, foreign and Nicaraguan, from engaging in similar development work.
 
 
 4
 Four individual defendants, Enrique Bermudez, Adolfo Calero, Aristides Sanchez and Indalecio Rodriguez are allegedly responsible for the torture and murder of Linder.[1] These individuals, who resided in Miami, Florida, were responsible for the military decisions and operational directions that were issued.
 
 
 5
 The allegations in the 33-page complaint are painted with a broad brush, culminating in five counts for relief: (1) under the Florida Wrongful Death Act, (2) battery by gunshot, grenade and a sharp pointed instrument, (3) intentional infliction of emotional distress, (4) civil conspiracy and (5) violation of Article 3 of the First Geneva Convention, the Second Geneva Convention and the Protocols thereto, customary international law, and other treaties.
 
 Proceedings in the District Court
 
 6
 The district court granted defendants' motion to dismiss the amended complaint. 747 F.Supp. 1452. It gave three reasons for finding that plaintiffs' claims raised non-justiciable political questions: (1) a lack of judicially manageable standards to adjudicate the merits of the claims, (2) the prospect that the parties would not be able to gather the information necessary to adjudicate the claims, (3) the danger that adjudication of the merits could lead to interference with the conduct of foreign policy by the political branches of the United States government.
 
 Standard of Review
 
 7
 Because this is an appeal from the granting of a motion to dismiss, the amended complaint's allegations must be taken as true and read in the light most favorable to the plaintiffs. Quality Foods de Centro America, S.A. v. Latin American Agribusiness Development Corp., S.A., 711 F.2d 989, 994-95 (11th Cir.1983). A complaint may not be dismissed unless the plaintiff can prove no set of facts which would entitle him to relief. H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 249, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989) (quoting Hishon v. King & Spaulding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)); Conley v. Gibson, 355 U.S. 41, 45-48, 78 S.Ct. 99, 101-103, 2 L.Ed.2d 80 (1957). Errors of law in evaluating the dismissal of the complaint are subject to plenary review by this court. Taffet v. Southern Co., 930 F.2d 847, 851 (11th Cir.1991).
 
 District Court's Reasons for Dismissal
 
 8
 The district court concluded first that 28 U.S.C. § 1331 does not confer federal jurisdiction over claims for relief by an individual predicated upon an alleged breach of customary international law. Second, even if this were not so, it would fail because of the non-governmental status of the defendants. Third, the Geneva Conventions are not self-executing. Fourth, even if suit would otherwise lie under 28 U.S.C. § 1332(a)(3), there can be no judicial redress for injuries occurring outside of the United States during conflicts between belligerents.
 
 The district court found that:
 
 9
 [the amended complaint] is based on the underlying torts of battery and intentional infliction of emotional distress. There are however no applicable standards which would readily permit the fact-finder to thoroughly assess the defendants' liability in this case. As a federal court sitting in diversity jurisdiction, we would ordinarily apply the tort law of Florida to determine the liability of the defendants. However, the plaintiffs have failed to cite, and we are unaware of any instance in which Florida tort law or the tort law of any other jurisdiction has been applied to actions arising out of injuries suffered in the midst of civil war occurring on foreign soil....The allegations contained in the amended complaint go far beyond the simple claim that Linder was tortiously killed through acts of the defendants. Rather, the plaintiffs have levelled broadbased charges that the participation in acts of warfare and terror against Nicaragua constitute unlawful action....
 
 
 10
 The realm of issues determinable by a court or jury with reference to Florida tort law simply does not include issues such as these arising out of conflict between belligerents in the midst of a foreign civil war.
 
 Contentions of the Parties
 
 11
 The plaintiffs contend that the district court seriously misread and mischaracterized the complaint to require an expansive judicial inquiry into the contra policies in Nicaragua. While they concede that some allegations of the complaint present theories that could be read broadly, plaintiffs rely on the narrow allegations that the individual defendants operating out of the Southern District of Florida are personally liable for the torture and murder of Linder. The complaint, they say, does not simply allege that agents of the defendants caused the torture and murder of Linder, or that the defendants generally approved particular attacks; rather the defendants themselves ordered Linder's killing because he was a United States citizen.
 
 
 12
 The plaintiffs argue that the allegations of the defendants' torture and execution of Linder violated fundamental norms of international law that are cognizable under federal question jurisdiction; that Common Article 3 of the Geneva Convention confers private rights on individuals and that its prohibitions on torture and summary execution can be enforced in United States courts; that jurisdiction under municipal tort law is applicable. They further argue that the political question doctrine is inapplicable to the narrow issue posed by this case because the relief sought does not interfere with foreign policy.
 
 
 13
 The defendants assert that since the plaintiffs' cause of action arises out of conduct by belligerents in a foreign war on foreign soil, it cannot be a matter of judicial complaint. They argue that municipal law does not recognize a claim for relief stemming from the conduct of war on foreign soil, and that neither the Geneva Conventions nor customary international law provides a private right of action. They submit that the political question doctrine bars relief because jurisdiction based upon alleged wrongs in foreign wars would require the court to intrude into foreign policy, create insurmountable information-gathering difficulties, and leave the court without judicially manageable standards.
 
 Discussion
 
 14
 We have little doubt that the broad-based issues alleged in the district court by the plaintiffs only slightly resemble the narrow issue presented to us. We do not agree with the plaintiffs that the district court seriously misread and mischaracterized the complaint to require a broad judicial inquiry into contra policies in Nicaragua. On the contrary, we read the allegations of the complaint as the district court did[2] as being required to discern between military, quasi-military, industrial, economic and other strategic targets, and rule upon the legitimacy of targeting such sites as hydroelectric plants on Nicaraguan soil in the course of a civil war. We would be called upon to inquire into whether, and under what circumstances, defendants were justified in targeting such sites, with knowledge that civilians or paramilitary or military personnel would be present at these sites. Indeed, we would be called upon to discern between military or paramilitary personnel guarding a strategic dam and engineers building or maintaining such a site during time of war. In short, "we would necessarily be required to measure and carefully assess the use of the tools of violence and warfare in the midst of a foreign civil war", and to inquire into "the relationship between United States policy and the actions of the contras".[3]
 
 
 15
 In brief and oral argument the plaintiffs concede it would be difficult to find discoverable and manageable standards to adjudicate the nature and methods by which the contras chose to wage war in Nicaragua. Also, whether a hydroelectric dam was an appropriate target and if so, was the act which was perpetrated permissible if civilians were present. Further, that if the plaintiffs had to discover information regarding the contras' relationship to the United States and the nature of the war-making adopted and implemented by the contras, then discovery could present problems.
 
 
 16
 The sweeping allegations of the complaint led the district court into a thicket of non-justiciable claims for relief that overshadowed the narrow issue of Florida tort liability now presented to us. Except for this issue, the district court properly dismissed the complaint. But since we must read the allegations of the complaint to include any theory on which the plaintiffs may recover, Robertson v. Johnston, 376 F.2d 43 (5th Cir.1967), we conclude that the amended complaint alleges a claim under Florida tort liability upon which relief may be granted.
 
 A. Tort Liability
 
 17
 It is important to point out that the amended complaint alleges that:
 
 
 18
 [t]he order to murder Benjamin Linder came directly from defendant Enrique Bermudez who knew of Linder's work on a development project, his identity, and United States citizenship. Defendant Bermudez ordered this attack with intent of killing Benjamin Linder. He ordered the attack because Linder was a United States citizen working on a development project to benefit the people of Nicaragua. Upon learning of the murder of Linder, defendant Bermudez congratulated and rewarded the Commander who did it. On information and belief Calero, Sanchez and Rodriguez approved the attack and murder.
 
 
 19
 There are no allegations in the amended complaint upon which to base the defendants' argument that the torture and murder of Linder took place during "a battle" or "skirmish". Rather it is specifically alleged that Linder was targeted, tortured and executed while he was a non-combatant civilian in the process of constructing a dam.
 
 
 20
 The determinative question to be resolved in this case is the following: Even though a civil war was in progress and "the actions taken against Linder [torture and murder] were part of an overall design to wage attacks on foreign development workers at development sites like hydroelectric plants as a means of terrorizing the population of Nicaragua"[4], does this immunize the defendants from tort liability for the torture and murder of Linder? We think not.
 
 
 21
 Contrary to the district court's conclusion, there is no foreign civil war exception to the right to sue for tortious conduct that violates the fundamental norms of the customary laws of war. And even if there were a geographical foreign civil war exception to the right to sue for such tortious conduct, that exception would be inapplicable here. The amended complaint alleges that substantial tortious conduct took place in the Southern District of Florida. This is not a case where the tortious conduct occurred wholly or even principally outside of the United States.
 
 
 22
 All of the authorities agree that torture and summary execution--the torture and killing of wounded non-combatant civilians--are acts that are viewed with universal abhorrence. As the court said in Filartiga v. Pena-Irala, 630 F.2d 876, 890 (2nd Cir.1980), "for purposes of civil liability, the torturer has become--like the pirate and slave trader before him--hostis humani generis, an enemy of all mankind." There is no exception for deliberately planned and heinous acts even during an armed conflict. 54 AM.JUR.2d, Military, and Civil Defense § 293 (1971); W. Winthrop, Military Law and Precedents 889 (2d ed. 1920). See Freeland v. Williams, 131 U.S. 405, 9 S.Ct. 763, 33 L.Ed. 193 (1889); Mitchell v. Harmony, 54 U.S. (13 Howard) 115, 14 L.Ed. 75 (1851).
 
 
 23
 The district court's reliance on Underhill v. Hernandez, 168 U.S. 250, 18 S.Ct. 83, 42 L.Ed. 456 (1897) and La Amistad de Rues, 18 U.S. (5 Wheat) 385, 5 L.Ed. 115 (1820) is misplaced. These cases stand only for the generally accepted premise that acts of legitimate warfare cannot be made the basis for individual liability, Underhill at 253, 18 S.Ct. at 85, and that each belligerent has an undoubted right to exercise all the rights of war against the other, La Amistad de Rues at 390, 5 L.Ed. 115. They do not support the district court's findings that domestic tort actions are not appropriate remedies for injuries to non-combatants occurring outside of the United States during conflicts between belligerents.
 
 B. The Political Question Doctrine
 
 24
 We now turn to the political question doctrine invoked by the district court. In our view, this presents no difficulty in going forward with the case. Under the allegations of tort liability that we have explicated, the complaint challenges neither the legitimacy of the United States foreign policy toward the contras, nor does it require the court to pronounce who was right and who was wrong in the Nicaraguan civil war. On the contrary, the complaint is narrowly focused on the lawfulness of the defendants' conduct in a single incident.
 
 
 25
 In Klinghoffer v. S.N.C. Achille Lauro, 937 F.2d 44 (2nd Cir.1991), the court held, in a diversity case, that the Palestine Liberation Organization could be held liable for the murder of an American citizen on the high seas, entirely outside of the United States. The PLO argued that the case constituted a non-justiciable political question because "it raises foreign policy questions and political questions in a volatile context lacking satisfactory criteria for judicial determination." In declining to accept this argument the court said:
 
 
 26
 [t]he fact that the issues before us arise in a politically charged context does not convert what is essentially an ordinary tort suit into a non-justiciable political question ... Here, we are faced with an ordinary tort suit, alleging that the defendants breached a duty of care owed to the plaintiffs or their decedents ... [B]ecause the common law of tort provides clear and well-settled rules on which the district court can easily rely, this case does not require the court to render a decision in the absence of "judicially discoverable and manageable standards."
 
 
 27
 Id. at 49.
 
 
 28
 We do, however, agree with the district court that the broad allegations of the claims in the amended complaint against the defendant organizations, FDN, UNO and NR, which comprise the entire military and political opposition in Nicaragua, are non-justiciable, and the motion to dismiss them was properly granted.
 
 
 29
 Having concluded that the district court had jurisdiction under 28 U.S.C. § 1332(a)(3) to entertain this diversity suit against the individual defendants for their alleged tortious actions in Florida, we do not reach or decide the jurisdictional arguments of the plaintiffs concerning the applicability of customary international law or the Geneva Conventions.
 
 Conclusion
 
 30
 The order granting the defendants' motion to dismiss the amended complaint as to the defendants FDN, UNO and NR is AFFIRMED. The order granting the defendants' motion to dismiss the individual defendants is REVERSED and the cause is REMANDED for further proceedings consistent with this opinion.[5]
 
 
 
 *
 See Rule 34-2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit
 
 
 [1]
 Rodriguez was never served. Bermudez has been assassinated
 
 
 [2]
 See 747 F.Supp. at 1460; Order of Dismissal at 17
 
 
 [3]
 Id. at 1460 and 1469; Order of Dismissal at 17 and 38
 
 
 [4]
 Order of Dismissal at 16
 
 
 [5]
 In accordance with Fed.R.Civ.P. 8(a)(1) and 8(e)(1), the district court may require the plaintiffs to reconstruct their complaint to present the narrow issue set forth in this opinion