Denice H. REIN, individually and as Executrix of the Estate of Mark Alan Rein, deceased, et al., Plaintiffs,

v.

SOCIALIST PEOPLE'S LIBYAN ARAB JAMAHIRIYA, the Libyan External Security Organization, a/k/a Jamahiriya Security Organization, a/k/a Jso, Libyan Arab Airlines, Lamen Khalifa Fhima, a/k/a A Al Amin Khalifa Fhima, a/k/a Mr. Lamin, and Abdel Basset Ali Al-Megrahi, a/k/a Abdel Baset Ali Mohmed, a/k/a Abdel Baset Ali Mohmed Al Megrahi, a/k/a Mr. Baset, Defendants.

John Thomas BACCIOCHI, individually and as Administrator of the Estate of Clare Louise Bacciochi, deceased, et al., Plaintiffs,

v.

SOCIALIST PEOPLE'S LIBYAN ARAB JAMAHIRIYA, et al., Defendants.

Norma R. WAGNER, individually and as Executrix of the Estate of Raymond R. Wagner, deceased, et al., Plaintiffs,

v.

SOCIALIST PEOPLE'S LIBYAN ARAB JAMAHIRIYA, et al., Defendants.

M. Victoria CUMMOCK, individually and as personal representative of the Estate of John Cummock, deceased, et. al., Plaintiffs,

v.

SOCIALIST PEOPLE'S LIBYAN ARAB JAMAHIRIYA, et al., Defendants.

Paul S. HUDSON, as personal representative of the Estate of Melina K. Hudson, deceased, Plaintiff,

v.

SOCIALIST PEOPLE'S LIBYAN ARAB JAMAHIRIYA, et al., Defendants.

Jane DAVIS, as personal representative of the Estate of Shannon Davis, deceased, et al., Plaintiffs,

v.

SOCIALIST PEOPLE'S LIBYAN ARAB JAMAHIRIYA, et al., Defendants.

Elizabeth PURTELL, individually and as representative of the Estate of Michael Stinnett, deceased, Plaintiff,

v.

SOCIALIST PEOPLE'S LIBYAN ARAB JAMAHIRIYA, et al., Defendants.

Loulie D. CANADY, individually and as Administratrix of the Estate of Valarie Canady, deceased, Plaintiff,

v.

SOCIALIST PEOPLE'S LIBYAN ARAB JAMAHIRIYA, et al., Defendants.

Brenda CANITZ, individually and as Representative of the Estate of Milutin Velimirovich, deceased, et al., Plaintiffs,

v.

SOCIALIST PEOPLE'S LIBYAN ARAB JAMAHIRIYA, et al., Defendants.

Nos. 96–CV–2077(TCP), 96–CV–1975(TCP), 96–CV–5140(TCP), 96–CV–2993(TCP), 94–CV–5557(TCP), 97–CV–0445(TCP), 97–CV–2610(TCP), 97–CV–2849(TCP) and 97–CV–0537(TCP).

United States District Court, E.D. New York.

Feb. 26, 1998.

Lee D. Kreindler, Kreindler & Kreindler, New York City, for Plaintiffs.

Robert C. Mirone, David S. Shields, II, Mirone & Shields, New York City, for Defendants.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Two motions are presently before the Court: (1) defendants' Motion to dismiss for lack of subject-matter and personal jurisdiction and for failure to state claims upon which relief can be granted; and (2) plaintiffs' Motion for an order prohibiting defendants from directing mailings or other communications to plaintiffs or their families. After briefly reviewing the background relevant to considering both of these motions, we discuss the merits of each in turn.

### BACKGROUND

In 1994, some of these plaintiffs (representatives and survivors of victims who died in the destruction and crash of Pan Am Flight 103 in Lockerbie, Scotland, in December 1988) brought an action in this Court against The Socialist People's Libyan Arab Jamahiriya, the Libyan External Security Organization, the Libyan Arab Airlines (hereinafter collectively referred to as "Libya"), and Messrs. Lamen Khalifa Fhima and Abdel Basset Ali Al–Megrahi (hereinafter the "individual defendants") on the ground that Libya and its agents were responsible for the plane's destruction and the resulting loss of life. Plaintiffs sought to vest subject-matter jurisdiction in the Court under the Foreign Sovereign Immunities Act of 1976 ("FSIA"). On motion by Libya, this Court dismissed the

action for lack of subject-matter jurisdiction under the FSIA as enacted prior its amendment in 1996. *Smith v. Socialist People's Libyan Arab Jamahiriya,* 886 F.Supp. 306 (1995), *aff'd,* 101 F.3d 239 (2d Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1569, 137 L.Ed.2d 714 (1997).

After Congress passed the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which *inter alia,* amended the FSIA, the present plaintiffs commenced a new action in this Court seeking essentially the same relief as was sought in the prior action.

## I.

In its reply brief Libya[1] says that it "does not claim that it has a *constitutional* right to sovereign immunity." (Emphasis in original.) This, of course, is something of a change from what we understood to be one of its original claims.

In broad form, Libya's claim is stated to be that "it possesses certain rights under *international* law." (Emphasis in original.)

Libya starts from the premise that the plaintiffs and the United States have mistaken "which branch of the United States Government possesses authority to determine the subject matter jurisdiction of federal courts." This, of course, is a false premise.

Subject matter jurisdiction is bestowed on the federal courts by our Constitution. Article III makes it abundantly clear that

"The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish" [and] "shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority ... to Controversies between ... a State, or the Citizens thereof, and foreign States, Citizens or Subjects".

U.S. Const. art. III, §§ 1, 2.

■ From its above-stated false premise, *Libya claims* that because Congress enacted

a law of the United States, i.e., the FSIA, which prescribed that the Court's "jurisdiction" is to be determined in accordance with designations made by the Secretary of State, the FSIA is unconstitutional. But, that is not what the FSIA provides. Rather, the FSIA says that in cases involving potential sovereign immunity defenses, the Courts of the United States should decide the same "in conformity with the principles set forth in this chapter." 28 U.S.C. § 1602. And, that

A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—... in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, [or] hostage taking[,] ... except that the court shall decline to hear a claim under this paragraph—(A) if the foreign state was not designated as a state sponsor of terrorism under section 6(j) of the Export Administration Act (50 U.S.C.App. 2405(j)) or section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. § 2371) at the time the act occurred ....

28 U.S.C. § 1605(a)(7).

Contrary to Libya's claim, this statute merely confirms the power (jurisdiction) of the Courts of the United States to hear and determine all the controversies between citizens of the United States and foreign States and provides that the Courts shall "decline" to hear claims against nations not designated as "terrorist" states but quite apparently leaves open, i.e., in the discretion of the Court, the power to hear claims against those nations so designated.

This does not change, but instead is very much in accord with both the "traditional office" (defendant's words) of the State Department's "suggestion of immunity" when sovereign immunity is viewed as the Second Circuit has said it should be, namely, as a defense "after jurisdiction has been acquired" by the Courts (as it has been in the case at bar). This was explained by the Court of Appeals for the Second Circuit in

---

**1.** The individual defendants have not been served with the Complaints in these actions and have

not entered appearances.

*Petrol Shipping Corp. v. Kingdom of Greece,* 360 F.2d 103 (2d Cir.), *cert. denied,* 385 U.S. 931, 87 S.Ct. 291, 17 L.Ed.2d 213 (1966), as follows:

> "[I]n an action against a sovereign just as in any other suit, jurisdiction must be acquired either by service of process, or by the defendant's appearance in court, or *in rem* by seizure and control of property. *Only after such jurisdiction is acquired,* does the sovereign immunity defense proper[l]y come into consideration. Instead of being a 'jurisdictional' matter in the same sense as acquiring jurisdiction over a person or property, *sovereign immunity presents a ground for relinquishing the jurisdiction previously acquired."*

*Id.* at 106, quoting brief of the United States as *amicus curiae* in the rehearing *en banc.* (Emphasis added.)

More recently, the Second Circuit Court of Appeals has restated this proposition in the predecessor to this case as follows:

> We have no doubt that Congress has the authority either to maintain sovereign immunity of foreign states as a defense to all violations of *jus cogens* if it prefers to do so or to remove such immunity if that is its preference, and we have no doubt that Congress may choose to remove the defense of sovereign immunity selectively for particular violations of *jus cogens,* as it has recently done in the 1996 amendment of the FSIA.

*Smith v. Socialist People's Libyan Arab Jamahiriya,* 101 F.3d at 242.

In other words, all that Congress has attempted to do is to state to the courts that they should not ignore a defense of sovereign immunity in the great majority of cases, but they may do so in their discretion in those cases in which the Executive Branch has designated the particular states to be terrorist nations. Whether the federal courts need follow the direction to decline in the great majority of such cases is not before this Court to consider at this time.

It is, of course, also a well-recognized proposition that the Executive Branch has virtual unlimited authority to determine which cases to prosecute both civilly and criminally on behalf of the United States.

Underlying all of the foregoing, are, of course, a number of basic propositions.

Under Article I, § 8 of the Constitution, Congress has the power "To define and punish Piracies and Felonies committed on the high Seas, and Offenses against the Laws of Nations" (cl.10) and the power "To declare War" (cl.11). Under the law enforcement and treaty powers (Art. II, § 1, cl. 8 and § 2, cl. 2), the President is charged with the duty of enforcing the laws and conducting foreign relations. Hence, it clearly was not a violation of the power of Congress to delegate to the Executive Branch (consistent with its power to conduct foreign relations) the designation of those sovereign nations which may be accorded sovereign immunity by the courts.

Moreover, on the question of a foreign state's sovereign immunity, the Supreme Court has held "that the FSIA provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country . . . ." *Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 443, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989). The FSIA "recognizes the immunity of foreign states, 28 U.S.C. § 1604, subject to specified exceptions," one of which is contained in the above-quoted portions of paragraph (7) of § 1605(a). *Smith v. Socialist People's Libyan Arab Jamahiriya,* 101 F.3d at 242.

In other words, the Constitution establishes and the FSIA simply recognizes and prescribes "subject matter" jurisdiction of the federal courts and a basis for obtaining such jurisdiction over a foreign country in such courts in cases "in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, [or] hostage taking . . . ." 28 U.S.C. § 1605(a)(7).

This should be dispositive of Libya's first revised claim.

## II.

■ Libya argues that this Court does not have personal jurisdiction over it because the facts alleged by plaintiffs fail to demonstrate sufficient contacts with this forum. Under

the FSIA, personal jurisdiction of a foreign state exists for claims for which the court has jurisdiction where service has been properly effected. 28 U.S.C. § 1330(b). Thus, subject-matter jurisdiction together with proper service of process gives the court personal jurisdiction. *Texas Trading & Milling Corp. v. Federal Republic of Nigeria,* 647 F.2d 300, 308 (2d Cir.1981), *cert. denied,* 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982).

In enacting § 1605(a)(7) of the FSIA, Congress intended to reach extraterritorial conduct. Accordingly, the relevant inquiry with respect to the minimum contacts analysis is whether the effects of a foreign state's actions upon the United States are sufficient to provide "fair warning" such that the foreign state may be subject to the jurisdiction of the courts of the United States. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Here, Libya is charged not "with mere untargeted negligence," but rather, intentional, tortious actions that "were expressly aimed at" the United States. *Calder v. Jones,* 465 U.S. 783, 789, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). This case concerns the destruction of a United States flag aircraft, which was manufactured and owed by United States corporations, while en route to the United States on a regularly scheduled flight with 189 United States nationals on board. Arguably, the destruction of Flight 103 has had extensive impacts on the United States, not the least of which was that 189 United States nationals were killed in an alleged terrorist attack designed to harm the interests of the United States, but also that the bombing posed significant security concerns for the United States and its aviation industry. It addition, plaintiffs assert, it has caused significant harm to United States businesses and the domestic economy through, for example, a decline in passenger travel and increases in operating, insurance and potential liability costs.

Any foreign state would know that the United States has substantial interests in protecting its flag carriers and its nationals from terrorist activities and should reasonably expect that if these interests were harmed, it would be subject to a variety of potential responses, including civil actions in United States courts.

## III.

Next, Libya claims that the FSIA violates due process because Libya has been designated a "state sponsor of terrorism." This designation, however, establishes only that an exception to foreign sovereign immunity under the FSIA applies in this action. The designation in no way affects the merits of the underlying claims or the liability of foreign states against whom actions may be maintained. *See* H.Rep. 94–1487, at 12, *First National City Bank v. Banco Para El Comercio Exterior de Cuba,* 462 U.S. 611, 620–21, 103 S.Ct. 2591, 77 L.Ed.2d 46 (1983). Having determined that it has jurisdiction in this nonjury action, this Court would put the FSIA aside and determine the merits of the action as an entirely separate matter. Furthermore, the FSIA in no way alters the fact that plaintiffs have the burden of proving that Libya was responsible for the acts alleged.

## IV.

In another change of position, Libya states that "we now believe that strict scrutiny" review is required of the Secretary of State's designation of Libya as a "state sponsor of terrorism." Libya argues that this designation "violates their *fundamental right to a fair trial* as guaranteed by the Due Process Clause" because it will preclude Libya from getting a fair trial. (Emphasis in original.) As discussed above, however, the Secretary's designation goes only to establishing jurisdiction in particular cases. Once the Court determines the question of jurisdiction, the FSIA and its provisions need be addressed no further, and the matter would proceed on the merits to the extent plaintiffs sustain their burden of proving the underlying conduct.

The Secretary's designation addresses only the issue of whether a foreign state receives immunity in the courts of the United States—a matter of grace and comity accorded to a foreign state by Congress and the Executive in their exclusive and discretionary exercise of their foreign affairs powers under the Constitution. Because no fundamental right is implicated by the classification, the appropriate test is whether

the statute is rationally related to a legitimate governmental purpose. *See, e.g., Heller v. Doe,* 509 U.S. 312, 319, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). If the "statute is supported by a legitimate legislative purpose furthered by rational means, judgments about the wisdom of such legislation remain within the exclusive province of the legislative and executive branches." *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 729, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984).

■ The 1996 amendment to the FSIA is a reasonable means of achieving the legitimate government purpose of protecting United States nationals and air carriers in international travel to and from the United States. The amendment is also a rational method of providing a forum for the victims of the enumerated acts to seek compensation for their injuries.

### V.

■ Libya's claim that the 1996 FSIA amendment is an impermissible *ex post facto* law has no merit. That doctrine is inapplicable here. The constitutional *ex post facto* doctrine protects individuals from arbitrary penal sanctions that work unfairly to deprive them of a liberty interest. *Doe v. Pataki,* 120 F.3d 1263, 1272 (2d Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1066, 140 L.Ed.2d 126 (1998). It is not applicable to the question of whether a foreign state may be completely immune from liability in civil tort actions. Furthermore, a foreign state is not criminally punished or subjected to penal sanctions merely because the United States chooses not to bestow sovereign immunity upon the foreign state in a civil action in a United States court. The 1996 FSIA amendment establishes only whether a foreign state is amenable to civil suit in the courts of the United States.

Whether the fact that punitive damages are permitted by the FSIA may operate as a penal sanction is an issue that the Court need not address at this juncture.

### VI.

Defendant Libya also moves to dismiss the Rein and Cummock plaintiffs' claims under the Torture Victims Protection Act ("TVPA"). Those claims, however, are directed only against the individual defendants, Al–Megrahi and Fhimah, parties not represented by defense counsel here. Similarly, the Cummock plaintiffs' allegations of violations of the Antiterrorism Act are directed only against the individual defendants. Accordingly, defendants represented here have no standing to challenge these claims under the TVPA or the Antiterrorism Act.

### VII.

Having established subject-matter and personal jurisdiction over defendants in this action, this Court also finds that it has pendent jurisdiction to hear all of the plaintiffs' remaining claims, including those by United States nationals for battery, intentional infliction of emotional distress and the claim by the Cummock plaintiffs of Libya's liability under the guaranty it made to the United Nations. *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. v. Navimpex Centrala Navala,* 989 F.2d 572, 582–83 (2d Cir.1993).

### VIII.

■ We turn now to plaintiffs' motion for an order prohibiting defendants from directing mailings or other communications to individual plaintiffs or their families. While plaintiffs correctly point out that it is within this Court's "inherent power to prohibit direct communications from one party to another under appropriate circumstances," *Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), we believe that the circumstances here do not give rise to such a situation.

The mailings about which plaintiffs complain clearly are not "entirely innocuous" or "purely informational" correspondence as characterized by defendants. The Court acknowledges that the mailings by Libya to plaintiffs are undesirable and cause plaintiffs some distress. The Court also acknowledges that Libya, as a litigant, has an obligation to refrain from sending any *unwanted* communications to its adversaries—particularly those which may touch upon the merits of the actions between them—and that Libya's attorneys have an obligation to advise them that they not do so. Yet, we do not believe

that Libya's actions to date in sending communications by mail to plaintiffs, standing alone, warrant the Court's exercise of its inherent power to supervise the conduct of parties appearing before the Court. The Court, however, strongly cautions the parties that they may not engage in conduct which interferes with its proceedings.

The Court shall continue to monitor the conduct of the parties in this litigation and will promptly hear any motions by plaintiffs in this regard and/or issue an order *sua sponte*, if necessary, to ensure that these proceedings are conducted in a proper and orderly fashion.

### CONCLUSION

For the reasons set forth above, the Court hereby finds that the Motions by defendants to dismiss for lack of subject-matter and personal jurisdiction and for failure to state claims upon which relief can be granted must be, and the same hereby are, denied. Similarly, the Court hereby finds that the Motion by plaintiffs for an order prohibiting defendants from directing unwanted mailings and other communications to plaintiffs or their families must be, and the same hereby is, denied.

The Court has carefully reviewed and considered all of the parties' remaining arguments and finds that they are without merit.

SO ORDERED.