**Avigail Lewis BITON, et al., Plaintiffs,**

v.

**PALESTINIAN INTERIM SELF–GOVERNMENT AUTHORITY, et al., Defendants.**

**No. CIV.A. 01–0382(RMC).**

United States District Court, District of Columbia.

March 18, 2004.

---

See also 233 F.Supp.2d 31.

David Jacob Strachman, McIntyre, Tate, Lynch & Holt, Providence, RI, Richard Horowitz, New York, NY, for Plaintiffs.

Maher H. Hanania, Hanania Kheder & Nawash, Falls Church, VA, for Defendants.

## MEMORANDUM OPINION

COLLYER, District Judge.

Avigail Lewis Biton, individually and on behalf of her husband's estate and her children, and Rachel Asraf bring suit under the Antiterrorism Act of 1991 ("ATA"), 18 U.S.C. § 2333, and various tort theories against the Palestinian Interim Self–Government Authority, also known as the Palestinian Authority or the

Palestinian National Authority ("PA"); the Palestine Liberation Organization ("PLO"); Yasser Arafat, president of the PA and chairman of the PLO; two senior members of the Palestinian Preventive Security Service ("PPSS"); two members of the Palestinian Police Service ("PPS"); and 99 "John Does" for their alleged involvement in the bombing of a school bus in the Gaza Strip on November 20, 2000, that killed two passengers (including Gabriel Biton, husband to Ms. Biton and the father of her children) and wounded nine others (including Ms. Asraf). Pending before the Court is the defendants' motion to dismiss pursuant to Rules 12(b)(1), (b)(2), and (b)(6) of the Federal Rules of Civil Procedure. The defendants assert a lack of personal jurisdiction over the five named individual defendants and the PA; immunity as a sovereign state and a lack of subject matter jurisdiction under the ATA; a lack of subject matter jurisdiction for the Biton family's claims under the ATA and state law; and non-justiciability. The defendants also remark that the conduct in question might be deemed an "act of war" not subject to the ATA, and that Palestinian resistance and self-defense against Israel do not constitute terrorism. The plaintiffs, not surprisingly, oppose dismissal on these grounds.

After a full consideration of the parties' briefs, the entire record, and applicable law, the Court finds that it lacks personal jurisdiction over the named individual defendants but that it may exercise jurisdiction over the PA and PLO. The named individual defendants therefore will be dismissed. The remainder of the motion to dismiss will be denied.

## I. BACKGROUND

For purposes of ruling on the instant motion to dismiss, the underlying facts of this case may be simply stated: at approximately 7:30 a.m. on November 20, 2000, a roadside device exploded near a bus that was transporting elementary school children and their teachers from Kfar Darom, an Israeli settlement in the southern Gaza Strip, towards Gush Katif.[1] The plaintiffs contend that the defendants are responsible for this bombing and the resulting deaths and injuries.[2] At issue now is the jurisdiction of the Court to hear and decide this case. On this preliminary issue, the plaintiffs' respective causes of action and the parties' relationships to the United States are critical.

Plaintiff Avigail Lewis Biton is an American citizen, the widow of Gabriel Biton, and the mother of the Biton children. She sues in her individual capacity under the ATA, which established a federal cause of action for damages resulting from terrorist attacks in foreign countries. Specifically, that statute provides:

Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and

1. These facts are not in genuine dispute at this stage of the litigation, although the defendants point to a lack of evidence that U.S. citizens were the target of the bombing.

2. The roadside bombing of the school bus that took Mr. Biton's life and injured Ms. Asraf is believed by some to have been part of the "al-

Aqsa Intifada," a series of violent demonstrations and clashes between Palestinians and Israeli Defense Forces that ensued following (now Israeli Prime Minister) Ariel Sharon's controversial visit to the Temple Mount/Haram al-Sharif in Jerusalem in September 2000. *See* Defs.' Mot. to Dismiss Exh. 1.

the cost of the suit, including attorney's fees.[3]

18 U.S.C. § 2333(a). Ms. Biton and her children sue for wrongful death, negligence, intentional and negligent infliction of emotional distress, and battery under federal common law. The amended complaint does not allege that any Biton family member, save for Ms. Biton, is or was an American citizen. Plaintiff Rachel Asraf is an American citizen who sues for herself under the ATA and for negligence, intentional and negligent infliction of emotional distress, battery, and assault.

The defendants are the PA, the PLO, and Yasser Arafat (collectively "the Palestinian leadership"); three senior Palestinian officials, Muhammed Dahlan, allegedly the commander in charge of the PPSS, Rashid Abu Shabak, allegedly the deputy commander of the PPSS, and Ghazi Jabali, allegedly the regional commander in the Gaza Strip of the PPS; Muhammed Eid Abdel Kadar Issa, allegedly a member of the PPS and an agent of the "Fatah" faction of the PLO, as well as the "Tanzim" terrorist unit; and John Does 1–99, who allegedly planned and carried out the bombing with the other defendants. None of the named individual defendants is alleged to have any presence, asset, or activity in the United States, except for President Arafat's occasional visits to the United Nations in New York City. The defendants assert that the PA also "is not present in the U.S." Defs.' Mot. to Dismiss at 7.

## II. LEGAL STANDARDS

■■■ Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiffs bear the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction to hear this case. *Jones v. Exec. Office of the President*, 167 F.Supp.2d 10, 13 (D.D.C.2001). In deciding such a motion, the Court must accept as true all of the factual allegations set forth in the amended complaint; however, such allegations " 'will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of the Fraternal Order of Police v. Ashcroft*, 185 F.Supp.2d 9, 13–14 (D.D.C.2001) (quoting 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1350). The Court may consider matters outside the pleadings. *Lipsman v. Sec'y of the Army*, 257 F.Supp.2d 3, 6 (D.D.C. 2003).

■■■ To thwart dismissal under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiffs must establish personal jurisdiction over each defendant. To this end, the Court may look outside the allegations of the amended complaint. *Helmer v. Doletskaya*, 290 F.Supp.2d 61, 65 (D.D.C.2003). "[T]he Court must accept Plaintiff[s'] claims as true in ruling on a Rule 12(b)(2) motion, unless they are directly contradicted by an affidavit . . . ."

---

**3.** The ATA defines "international terrorism" as:

activities that—(A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State; (B) appear to be intended—(i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; and (C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum[.]

18 U.S.C. § 2331(1).

*Novak–Canzeri v. Turki Bin Abdul Aziz Al Saud,* 864 F.Supp. 203, 206 (D.D.C. 1994).

■ A motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the amended complaint. The Court must accept as true all of the plaintiffs' well-pled factual allegations and draw all reasonable inferences in favor of the plaintiff; however, the Court does not need to accept as true any of the plaintiffs' legal conclusions. *Alexis v. District of Columbia,* 44 F.Supp.2d 331, 336–37 (D.D.C. 1999). "[An amended] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## III. ANALYSIS

### A. Personal Jurisdiction Over the Named Individual Defendants

■ The defendants begin their motion to dismiss by arguing that the Court may not exercise personal jurisdiction over the five named individual defendants, President Arafat and Messrs. Dahlan, Abu Shabak, Jabali, and Issa. As far as the record reveals, these defendants have no personal connection with the United States. Indeed, the plaintiffs acknowledge that "none of the individual defendants is a resident of the United States or has any commercial or other activities within the United States." Pls.' Opp. to Mot. to Dismiss at 49. The plaintiffs nonetheless assert that the named individual defendants have sufficient contacts with the United States for purposes of establishing personal jurisdiction, in conjunction with proper service of process, under Rule 4(k)(2) of the Federal Rules of Civil Procedure.

Rule 4(k)(2) states:

If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

FED. R. CIV. P. 4(k)(2). The Rule therefore "allows a district court to acquire jurisdiction over a foreign defendant which has insufficient contacts with any single state but has 'contacts with the United States as a whole ....'" *In re Vitamins Antitrust Litig.,* 94 F.Supp.2d 26, 31 (D.D.C.2000) (citing Advisory Comm. Note to 1993 Amendment). In *United States v. Swiss American Bank, Ltd.,* 191 F.3d 30 (1st Cir.1999), the First Circuit discussed the parameters of this procedural device.

The rule's fabric contains three strands: (1) the plaintiff's claim must be one arising under federal law; (2) the putative defendant must be beyond the jurisdictional reach of any state court of general jurisdiction; and (3) the federal courts' exercise of personal jurisdiction over the defendant must not offend the Constitution or other federal law.

*Id.* at 38. In applying this tripartite test here, the question is whether the named individual defendants have sufficient contacts with the United States to satisfy the Due Process Clause of the Fifth Amendment to the U.S. Constitution.[4]

---

4. The plaintiffs state that they "have initiated service of process on the defendants pursuant to Fed.R.Civ.P. 4(f)(1) and 4(h)(2) and the provisions of the Hague Convention, and expect that it will be completed during the pen-

The plaintiffs urge the Court to adopt "a due process analysis specifically fitted to the unique circumstances of civil actions against foreign terrorists and their sponsors" that has been applied by a fellow district judge of this Court, as well as a district judge on the United States District Court for the Eastern District of New York. Pl.'s Opp. to Mot. to Dismiss at 49. In a case involving the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 1605(a)(7)—which amended the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602, to permit lawsuits against state sponsors of terrorism—Judge Royce C. Lamberth of this Court concluded that "a foreign state that causes the death of a United States national through an act of state-sponsored terrorism has the requisite 'minimum contacts' with the United States so as not to offend 'traditional notions of fair play and substantial justice.' " *Eisenfeld v. Islamic Republic of Iran*, 172 F.Supp.2d 1, 7 (D.D.C.2000) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 326, 66 S.Ct. 154, 90 L.Ed. 95 (1945)); *see also Flatow v. Islamic Republic of Iran*, 999 F.Supp. 1, 22 (D.D.C.1998) (same). Judge Thomas C. Platt made a similar ruling in *Rein v. Socialist People's Libyan Arab Jamahiriya*, 995 F.Supp. 325 (E.D.N.Y. 1998), *aff'd in part and appeal dismissed in part*, 162 F.3d 748 (2d Cir.1998), which also dealt with the 1996 amendment to the FSIA. Judge Platt stated that "the relevant inquiry with respect to the minimum contacts analysis is whether the effects of a foreign state's actions upon the United States are sufficient to provide 'fair warning' such that the foreign state may be subject to the jurisdiction of the courts of the United States." *Id.* at 330. In finding that Libya could stand trial for the 1988 bombing of Pan Am Flight 103 in Lockerbie, Scotland, Judge Platt held:

> Any foreign state would know that the United States has substantial interests in protecting its flag carriers and its nationals from terrorist activities and should reasonably expect that if these interests were harmed, it would be subject to a variety of potential responses, including civil actions in United States courts.

*Id.*

There is some merit, in early 2004, to the plaintiffs' argument that no foreign terrorist today can fairly assert a lack of "fair warning" that it could be "haled into court" in the United States, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), particularly given the exhaustive antiterrorism policies and other measures implemented by the United States Government following the terrorist attacks on September 11, 2001. However, the differences between the ATA and the FSIA are too great for their common focus on antiterrorism to allow cross-pollination on this issue. The Court consequently declines to extend the due process analysis set forth in *Eisenfeld/Flatow* and *Rein* to ATA claims filed against individual (non-state) defendants.[5]

---

dency of this motion." Pls.' Opp. to Mot. to Dismiss at 47.

**5.** This Court is not alone in employing a traditional due process analysis to determine whether it may exercise personal jurisdiction over individual defendants in a lawsuit brought under the ATA. In *Ungar v. Palestinian Authority*, 153 F.Supp.2d 76 (D.R.I.2001), a district judge on the United States District Court for the District of Rhode Island considered this same issue—with similar arguments in support and in opposition—and dismissed ATA claims against individual officers of various PA/PLO law enforcement and intelligence agencies.

There is one very simple reason why a district court may exercise personal jurisdiction over a foreign state defendant under the FSIA but not a similarly-situated individual defendant under the ATA. Section 1330(b) of the FSIA provides that "personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction ... where service has been made under section 1608 of this title." 28 U.S.C. § 1330(b); *see also Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1548 n. 11 (D.C.Cir.1987) ("[U]nder the FSIA, 'subject matter jurisdiction plus service of process equals personal jurisdiction.'") (quoting *Texas Trading & Milling Corp. v. Fed. Republic of Nigeria*, 647 F.2d 300, 308 (2d Cir.1981)). The ATA, in contrast, does not contain such an explicit grant of personal jurisdiction. *See Ungar v. Palestinian Auth.*, 153 F.Supp.2d 76, 95 (D.R.I.2001) (noting that § 2334(a) provides for venue and nationwide service of process). Of course, a statute cannot confer personal jurisdiction when the U.S. Constitution forbids it. *Gilson v. Republic of Ireland*, 682 F.2d 1022, 1028 (D.C.Cir. 1982). The D.C. Circuit held in *Price v. Socialist People's Libyan Arab Jamahiriya* that "foreign states are not 'persons' protected by the Fifth Amendment[.]" 294 F.3d 82, 96 (D.C.Cir.2002). Therefore, so long as subject matter jurisdiction exists under the FSIA and service was proper, there is no "need to examine whether [a foreign state defendant] has the minimum contacts that would otherwise be a prerequisite for personal jurisdiction under the Due Process Clause of the Fifth Amendment." *I.T. Consultants, Inc. v. Islamic Republic of Pakistan*, 351 F.3d 1184, 1191 (D.C.Cir.2003).

Unless the named individual defendants have minimum contacts with the United States that square with the Due Process Clause, which they admittedly do not, the Court may not exercise personal jurisdiction over them under Rule 4(k)(2) of the Federal Rules of Civil Procedure. Accordingly, the named individual defendants will be dismissed from this case.

**B. Personal Jurisdiction Over the Palestinian Authority**

◼ The defendants also move to dismiss the amended complaint against the PA for lack of personal jurisdiction.[6] Unlike the named individual defendants, the PA appears to have sufficient contacts with the United States to satisfy due process concerns. *See Ungar*, 153 F.Supp.2d at 88 (holding that the plaintiffs in that case had "made a prima facie showing that defendants PA and PLO have minimum contacts with the United States as a whole."). The plaintiffs assert that the PA maintains offices and agents, including Hasan Abdel Rahman, in the United States.[7] In support, they submit an article from the National News stating that Mr. Abdel Rahman "has been the Washington representative of the Palestine Liberation Organization and Palestinian National Authority since 1994"; a transcript from an online discussion forum hosted by the Washington Post introducing Mr. Abdel

---

**6.** The defendants do not challenge the Court's exercise of personal jurisdiction over the PLO.

**7.** The plaintiffs filed a "return of service" affidavit indicating that Mr. Abdel Rahman was served on March 14, 2001, in Washington, D.C. With no evidence or argument to the contrary—the defendants merely state that "[s]ervice on the PA which is not present in the United States is challenged" without explaining why, Defs.' Mot. to Dismiss at 7—the Court finds that Mr. Abdel Rahman is a "managing or general agent" of the PA for purposes of Rule 4(h) of the Federal Rules of Civil Procedure. *See infra* pp. 179–80.

Rahman as "chief representative of the Palestinian National Authority and Palestine Liberation Organization, [*sic*] in the United States"; and a biography purportedly received from the PA/PLO describing Mr. Abdel Rahman as "Chief Representative of the P.L.O. and the P.N.A. in the United States[.]" Pls.' Opp. to Mot. to Dismiss Exhs. 6, 7, 4. The plaintiffs further argue that the PA conducts extensive activities in the United States. For example, the PA has employed the lobbying firm of Bannerman & Associates to provide advocacy training and assistance with developing a public relations campaign in the United States. *See id.* Exhs. 5, 9, 10. The PA (and PLO) also entered into a commercial telecommunications contract with International Technologies Integration, Inc. ("ITI"), a Virginia corporation. *See Int'l Techs. Integration, Inc. v. Palestine Liberation Org.,* 66 F.Supp.2d 3 (D.D.C.1999). A lawsuit brought by ITI to confirm an arbitration award "revealed that the PA and the PLO maintain several bank accounts in New York with deposits totaling approximately $18 million [ ]." *Ungar,* 153 F.Supp.2d at 88; *see also* Pls.' Opp. to Mot. to Dismiss Exh. 11.

For these reasons, the Court concludes that it may exercise personal jurisdiction over the PA. The plaintiffs have adequately shown that the PA has minimum contacts with the United States under the Fifth Amendment and, in any event, that Mr. Abdel Rahman was personally served with process in Washington, D.C. The motion to dismiss the PA for lack of personal jurisdiction therefore will be denied.

### C. Palestinian Statehood

■ Citing § 2337(2) of the ATA and § 1604 of the FSIA, the defendants move to dismiss this action on the grounds that Palestine is a sovereign entity. Section 2337(2) prohibits the maintenance of a civil ATA lawsuit against "a foreign state, an agency of a foreign state, or an officer or employee of a foreign state or an agency thereof acting within his or her official capacity or under color of legal authority." 18 U.S.C. § 2337(2). The FSIA directs that, with exceptions, "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States ...." 28 U.S.C. § 1604; *see also Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 443, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989) ("[T]he FSIA provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country[.]").

The defendants contend that Palestine is a "foreign state" under the definition set forth in the Restatement (Third) of the Foreign Relations Law of the United States ("Restatement").[8] Section 201 of the Restatement provides: "Under international law, a state is an entity that has a defined territory and a permanent population, under the control of its own government, and that engages in, or has the capacity to engage in, formal relations with other such entities." Despite the obvious magnitude and controversial nature of this issue, the defendants do not offer or cite any evidence in support of their bid for recognition of Palestinian statehood. *See* Pls.' Opp. to Mot. to Dismiss at 17–18. They simply argue:

> The State of Palestine has a defined territory in the West Bank, and the Gaza Strip and East Jerusalem, a permanent population numbering in the millions under the control of its own government and engages in and has the

8. The Second Circuit employs the Restatement's definition of the term "state" when interpreting the FSIA. *See Klinghoffer v. S.N.C. Achille Lauro,* 937 F.2d 44, 47 (2d Cir.1991) (holding that the PLO is not a "state" with immunity).

capacity to engage in foreign relations with other states.

Palestine issued a declaration of its independence on November 15, 1988 that has at all times thereafter been extant. November 15 is annually celebrated by Palestinians throughout the state and world as independence day.

Statehood is not dependent on recognition.

The mid-east peace process carried forward by the Oslo Accord and other diplomatic measures and means envisions full recognition of Palestinian statehood ... The recently expressed willingness of the United States to recognize Palestinian statehood confirms that the definition's criteria are satisfied. The reasons recently given by President Bush and other U.S. Executive Branch officers for delay in expressing recognition signify no doubt that Palestine meets the definitional criteria for statehood, but rather seek to induce adherence to U.S. foreign policies unrelated to the criteria.

Defs.' Mot. to Dismiss at 9–10.

The long-running conflict between the Israelis and the Palestinians has its very origins in the question of statehood between them. The current record does not permit the Court to overlook this reality or to declare that Palestine is now a sovereign state among nations. As a result, the Court must conclude that neither § 2337(2) of the ATA nor § 1604 of the FSIA bars this lawsuit. *See Tel–Oren v. Libyan Arab Republic*, 726 F.2d 774, 804 (D.C.Cir.1984) (Bork, C.J., concurring) (expressing the view that neither the PLO, the Palestine Information Office, nor the National Association of Arab Americans

"seem[s] to be a state under international law"); *Knox v. Palestine Liberation Org.*, No. 03–4466, 306 F.Supp.2d 424, ——, 2004 WL 385024, *5, 2004 U.S. Dist. LEXIS 3128, at *16 (S.D.N.Y. Mar. 2, 2004) (holding that "there does not exist a state of Palestine which meets the legal criteria for statehood ...").

### D. Stating a Claim under the ATA and Supplemental Jurisdiction

█ The defendants assert that Avigail Lewis Biton "has no claim under Sec. 2333(a) ... because she was not on the bus and was not injured in her 'person, property or business by an act of international terrorism.' "[9] Defs.' Mot. to Dismiss at 14. The plaintiffs respond that Ms. Biton's injury is the death of Gabriel Biton, her spouse. This allegedly has caused her to suffer emotional distress, a loss of consortium, and a loss of solatium.

It is clear that Ms. Biton cannot recover under the ATA as a representative of Mr. Biton's estate or as his survivor, because he was not a U.S. national. If Ms. Biton sues as the principal victim herself, however, she may be able to state a claim if she can allege a cognizable injury that arose by reason of an act of international terrorism. 18 U.S.C. § 2333(a). The amended complaint avers that Ms. Biton is "an American citizen" and that her husband's death resulted from "a bombing attack on an Israeli civilian vehicle traveling in the Gaza Strip."[10] 2nd Am. Compl. ¶¶ 4, 22. Accordingly, the pertinent issues here are (1) whether emotional distress, a loss of consortium, and a loss of solatium constitute injuries in Ms. Biton's "person, prop-

---

**9.** As the plaintiffs' note, § 2333(a) actually states that "[a]ny national of the United States injured in his or her person, property, or business *by reason of* an act of international terrorism, *or his or her estate, survivors, or*

*heirs,* may sue therefor ...." 18 U.S.C. § 2333(a) (emphasis added).

**10.** The Court accepts these facts as true when deciding this Rule 12(b)(6) motion.

erty, or business" and, if so, (2) whether the bombing reasonably could be considered the "cause" of her injuries. 18 U.S.C. § 2333(a).

The Court concludes that Ms. Biton has properly alleged an "injur[y] in ... her person" for purposes of the ATA. *Id.* The statute does not specifically require that a plaintiff suffer *physical* harm prior to filing suit. Moreover, the term "personal injury" means "[a]ny invasion of a personal right, including mental suffering and false imprisonment." [11] BLACK'S LAW DICTIONARY (7th ed.1999). Ms. Biton's alleged injuries fall within this widely-accepted definition. The forced loss of "material services[,] ... affection, companionship, sexual relations, and the customary amenities of married life" is ordinarily deleterious. *Curry v. Giant Food Co. of the District of Columbia,* 522 A.2d 1283, 1294 (D.C.1987) (defining consortium). Similarly, "mental anguish, emotional pain and suffering, [and] loss of society, companionship, comfort, protection, marital care, attention, advice or counsel" are harmful. *Brooks v. Bienkowski,* 150 Md.App. 87, 818 A.2d 1198, 1200 (2003) (defining solatium). These injuries are cognizable under the plain language, as well as a commonsense interpretation, of the ATA. Consider the following hypothetical scenario: during a terrorist attack in a foreign country, the perpetrators throw a grenade at a car that is owned by a U.S. national and being driven by her (foreign) husband. The car explodes and the driver is killed. It seems unlikely that Congress would have considered damage to a car to constitute an "injury" for purposes of the ATA but not emotional trauma and a loss of companionship from the death of a spouse occurring in the same attack.[12] Which would you rather lose, a car or a spouse?

■ Ms. Biton also has properly alleged that the bus bombing was the legal cause of her injuries. The Seventh Circuit has interpreted the clause "by reason of" to require a showing of proximate cause. *Boim v. Quranic Literacy Inst.,* 291 F.3d 1000, 1011–12 (7th Cir.2002). "Foreseeability is the cornerstone of proximate cause, and in tort law, a defendant will be held liable only for those injuries that might have reasonably been anticipated as a natural consequence of the defendant's actions." *Id.* at 1012. In most instances, "the existence of proximate cause is a question of fact for the jury." *District of Columbia v. Freeman,* 477 A.2d 713, 716 (D.C.1984). Based on the allegations of the amended complaint, a reasonable jury could find that Ms. Biton's (non-physical) injuries were the foreseeable and natural result of the bombing that killed her husband.

Therefore, the Court finds that Ms. Biton, suing in her individual capacity, has properly stated a claim against the defendants under the ATA.

■ The defendants next assert that the Court lacks subject matter jurisdiction to hear the Biton family's tort claims. The Bitons predicate jurisdiction of these claims on "the rules of supplemental jurisdiction." 2nd Am. Compl. ¶ 2. The defendants contend that "[t]he Biton plaintiffs have no colorable claim whatsoever under

---

11. The ATA "contains all of the elements of a traditional tort ... and we must therefore look to tort law and the legislative history to determine [its scope]." *Boim v. Quranic Literary Inst.,* 291 F.3d 1000, 1010 (7th Cir. 2002).

12. Under the defendants' interpretation of § 2333(a), "Mrs. Biton could sue for the value of the cash in her husband['s] pockets that was incinerated by the bombing, but not for the harm caused to her by the actual death of her husband." Pls.' Opp. to Mot. to Dismiss at 64 n.54.

sec. 2333(a) or any other provision of law within this Court's original jurisdiction that could serve as the basis for this Court's exercise of supplemental jurisdiction over the *Biton* pendent claims and the *Biton* children as pendent parties." Defs.' Mot. to Dismiss at 14. Given the defendants' incorrect assumption that none of the plaintiffs has a "colorable claim" under the ATA, *see supra* pp. 13–15, this argument fails.

Section 1367(a) of Title 28 of the United States Code extends to federal district courts supplemental jurisdiction over "claims that are so related to claims in the action within … original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a). This provision embodies "the practice of 'pendent party' jurisdiction, allowing the joinder of a party even though there is no independent federal question jurisdiction over that party's claims." *Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F.Supp.2d 86, 98 (D.D.C.2003). In this case, Ms. Biton has advanced a federal cause of action under the ATA over which this Court has original jurisdiction. All of the plaintiffs' claims "derive from a common nucleus of operative fact"—*i.e.*, the bus bombing in the Gaza Strip. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The Court chooses to exercise its discretion to hear these related claims in the interests of "economy, convenience, fairness, and comity[.]" *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 357, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). Thus, this portion of the motion to dismiss will be denied.

**E.  Justiciability**

█ According to the defendants, the allegations in the amended complaint "amount to an all-out political attack upon the PA, the PLO, President Arafat, and senior Palestinian officials of such wide scope as to be nonjusticiable, raising issues that are not appropriate for or capable of judicial resolution." Defs.' Mot. to Dismiss at 15. The Supreme Court in *Baker v. Carr* established a framework for determining whether a lawsuit implicates a political question:

> Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

369 U.S. 186, 217, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

The defendants cite *Linder v. Portocarrero*, 963 F.2d 332 (11th Cir.1992), in support of their argument that "the high level of violence and antipathy during the months since September 2000 have created a situation" rendering the plaintiffs' claims non-justiciable. Defs.' Mot. to Dismiss at 15. In that case, Benjamin Linder, a mechanical engineer and U.S. citizen, went to Nicaragua to construct dams and hydroelectric plants. In April 1987, he was allegedly tortured and killed by members of the Nicaraguan Democratic Force. Mr.

Linder's family filed suit against the individuals allegedly involved and three anti-government military organizations. The District Court dismissed the case based in part on the political question doctrine. The Eleventh Circuit reversed as to the individual defendants but affirmed the dismissal of the defendant organizations on the grounds of non-justiciability. *Id.* at 337.

The District Court in *Linder* gave three reasons for applying the political question doctrine:

> First, and perhaps most important, this court can discern no judicially manageable criteria by which to adjudicate the merits of the claim. Second, the real prospect that the parties would not be able to fully gather the data necessary to adjudicate this claim on the merits also points to a finding of non-justiciability. Finally, adjudication on the merits could readily lead to real interference with the conduct of foreign policy by the political branches of government.

*Linder v. Portocarrero,* 747 F.Supp. 1452, 1457 (S.D.Fla.1990). However, these reasons do not apply with the same force, if at all, to the case at hand. *See Ungar v. Palestinian Auth.,* 228 F.Supp.2d 40, 45 (D.R.I.2002) (distinguishing *Linder* from a fatal car attack in Israel allegedly committed by the terrorist group HAMAS). Adjudication of the complaint in *Linder* would have required the Florida District Court " 'to measure and carefully assess the use of the tools of violence and warfare in the midst of a *foreign civil war* ', and to inquire into 'the relationship between United States policy and the actions of the contras[.]' " *Linder,* 963 F.2d at 335 (quoting the District Court) (emphasis added). Conversely, there are judicially discoverable and manageable standards for deciding the Bitons' and Ms. Asraf's claims, namely the ATA. The ATA created

a federal cause of action for acts of "international terrorism," a precisely-defined term. *See* 18 U.S.C. § 2331(1). In conjunction with that statute, the "common law of tort provides clear and well-settled rules on which the district court can easily rely[.]" *Klinghoffer v. S.N.C. Achille Lauro,* 937 F.2d 44, 49 (2d Cir.1991). This lawsuit also does not present separation of powers concerns. *But see Tel–Oren v. Libyan Arab Republic,* 726 F.2d 774, 824–26 (D.C.Cir.1984) (Robb, S.C.J., concurring). By enacting the ATA, both the Executive and Legislature have "expressly endorsed the concept of suing terrorist organizations in federal court[.]" *Klinghoffer,* 937 F.2d at 49; *see also* Flatow Amendment, 28 U.S.C. § 1605 note (providing a cause of action against an official, employee, or agent of a "state sponsor of terrorism" for personal injury or death "caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources . . . for such an act . . . .") (quoting 28 U.S.C. § 1605(a)(7)). In the aftermath of September 11, 2001—and even before that tragedy—President George W. Bush and members of Congress have, on numerous occasions, publicly announced multifaceted policies having the goal of condemning terrorist activities. *See, e.g.,* S.J. Res. 22, 107th Cong. (2001).

The Court disagrees with the defendants' characterization of the amended complaint as an "all-out political attack upon the Palestinian government and its officials[.]" Defs.' Mot. to Dismiss at 22. Although the backdrop for this case—*i.e.,* the Israeli–Palestinian conflict—is extremely politicized, this circumstance alone is insufficient to make the plaintiffs' claims non-justiciable. Indeed, "the fact that the issues . . . arise in a politically charged context does not convert what is essentially an ordinary tort suit into a non-justiciable political question." *Klinghoffer,* 937

F.2d at 49. The political question doctrine should be construed narrowly. For all of these reasons, the motion to dismiss on the grounds of non-justiciability will be denied.

### F. Act of War/Self–Defense

Lastly, the defendants argue that "the explosion near Kfar Darom may well be shown to have been part of a conflict that makes it an act of war for purposes of sec. 2336." Defs.' Mot. to Dismiss at 24. The ATA bars a civil action for "injury or loss by reason of an act of war." 18 U.S.C. § 2336(a). "[T]he term 'act of war' means any act occurring in the course of—(A) declared war; (B) armed conflict, whether or not war has been declared, between two or more nations; or (C) armed conflict between military forces of any origin[.]" *Id.* § 2331(4). Given that the defendants concede that "[t]he facts cannot be determined on this motion[,]" Defs.' Mot. to Dismiss at 24, the Court takes this issue under advisement.

The defendants similarly assert that "[a]ctions by Palestinians in the occupied territories are not intended to intimidate or coerce Israeli civilians or their government ... [but instead] to resist and overcome the oppression and end the occupation." *Id.* at 24–25. Whether the bus bombing "appear[ed] to be intended—(i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping" is a disputed question of material fact. 18 U.S.C. § 2331(1) (part of the definition of the term "international terrorism"). On a motion to dismiss, the Court will not determine the defendants' intent in allegedly committing the bus bombing.

## IV. CONCLUSION

The motion to dismiss will be granted in part and denied in part. The Court con-cludes that it may exercise personal jurisdiction over the PA and the PLO; that Palestine is not a "state" for purposes of the FSIA based on the current record; that Avigail Lewis Biton has properly stated a claim under the ATA; that supplemental jurisdiction exists over the Biton family's tort claims; and that this case does not present a non-justiciable political question. The Court also finds that it may not exercise personal jurisdiction over the named individual defendants; the amended complaint allegations against these defendants will be dismissed. Finally, the Court takes under advisement the defendants' act of war/self-defense arguments. A separate order accompanies this memorandum opinion.

### *ORDER*

For the reasons set forth in the memorandum opinion that accompanies this order, it is hereby

**ORDERED** that the motion to dismiss is **GRANTED** in part and **DENIED** in part. It is

**FURTHER ORDERED** that defendants Yasser Arafat, Muhammed Dahlan, Rashid Abu Shabak, Ghazi Jabali, and Muhammed Eid Abdel Kadar Issa are **DISMISSED** from this action due to a lack of personal jurisdiction.

**SO ORDERED.**